UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARTANYA L. HAUSBURG,

      Plaintiff,

v.                                                                                  Case No: 8:20-cv-2300-JSS

DENIS MCDONOUGH,
SECRETARY, DEPARTMENT OF
VETERANS AFFAIRS,

      Defendant.
_____/

## <u>ORDER</u>

Defendant moves for partial summary judgment on Counts III, IV, V, and VII of Plaintiff's Third Amended Complaint and moves to dismiss Plaintiff's claims asserted pursuant to the Back Pay Act as a matter of law.  (Motion, Dkt. 91.)  Plaintiff opposes the Motion.  (Response, Dkt. 99.)[1]  The court held a hearing on the Motion on April 21, 2023.  (Dkt. 104.)  For the reasons that follow, the Motion is granted in part and denied in part.

---

[1] Plaintiff states that his Response "incorporates all pleadings" including a motion to compel (Dkt. 78) that Plaintiff filed on February 14, 2023 and to which he attached 360 pages of exhibits.  (Dkt. 99 at 2.)  However, such incorporation by reference is improper as this practice "foists upon the Court the burden of sifting through irrelevant materials to find the materials referenced while permitting the movant [or the respondent] to circumvent this Court's page limit requirement."  *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1253 (M.D. Fla. 2012), *aff'd in part,* 505 F. App'x 928 (11th Cir. 2013).  Moreover, "such motion practice results in imprecise and inartful briefing."  *Boswell v. Gee*, No. 8:18-cv-1769-EAK-AEP, 2019 WL 3718206, at *3 (M.D. Fla. Aug. 6, 2019).  Accordingly, the court will not consider arguments made in Plaintiff's other filings as part of his Response to the Motion.

# INTRODUCTION

Plaintiff Dartanya L. Hausburg brings this employment discrimination action against Defendant Denis McDonough, Secretary of the Department of Veterans Affairs (VA), alleging claims arising from Plaintiff's employment at the James A. Haley Veterans Administration Hospital (VAMC) in Tampa, Florida. (Dkt. 32.) Plaintiff alleges that while employed at the VAMC, he was "discriminated against based on disparate treatment due to his disability, denial of reasonable accommodation, and reprisal for [Equal Employment Opportunity (EEO)] activities when he was subjected to a hostile work environment from November 1, 2017 to April 18, 2019." (*Id.* ¶ 12.) Plaintiff's Third Amended Complaint asserts the following counts that remain at issue in this action[2]: retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII) (Count I); retaliatory hostile work environment under Title VII (Count II); violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (FMLA) (Count III); failure to reasonably accommodate disability under the Rehabilitation Act of 1973, 29 U.S.C. § 791 (Rehabilitation Act) (Count IV); disability discrimination under the Rehabilitation Act (Count V); and injunctive relief (Count VII). (*Id.*) Defendant answered the Third Amended Complaint and asserted seven affirmative defenses in response. (Dkt. 47.)

In the Motion, Defendant moves for partial summary judgment on Counts III, IV, V, and VII of the Third Amended Complaint. (Dkt. 91.) Specifically, Defendant

---

[2] On April 12, 2022, the court granted in part Defendant's motion to dismiss the Third Amended Complaint and dismissed Count VI with prejudice. (Dkt. 45.)

argues that partial summary judgment is warranted on Counts IV and V under the Rehabilitation Act to the extent that those counts rely on allegations for which Plaintiff has not adequately exhausted his administrative remedies.  (*Id.* at 11–14.)  Plaintiff responds that Defendant's assertion of administrative exhaustion is procedurally improper at the summary judgment stage, that issues of material fact preclude summary judgment on the exhaustion issue, and that any unexhausted allegations sufficiently relate to exhausted allegations in the Third Amended Complaint.  (Dkt. 91 at 11–14.)  Defendant further argues that summary judgment is proper on Counts IV and V because Plaintiff cannot establish a failure to reasonably accommodate disability or disability discrimination under the Rehabilitation Act.  (*Id.* at 21–24.)  Plaintiff responds that material issues of fact remain as to whether he was a qualified individual under the Rehabilitation Act and whether he provided sufficient information to Defendant of his need for a reasonable accommodation.  (Dkt. 99 at 18–20.)  As to Count III, Defendant argues that Plaintiff cannot establish interference with his FMLA rights and cannot make out a *prima facie* case of FMLA retaliation. (Dkt. 91 at 21.)  Plaintiff responds that material issues of fact preclude summary judgment on Count III and there is both circumstantial and direct evidence of FMLA hostility by Defendant.  (Dkt. 99 at 17–18.)  As to Count VII, Defendant argues that because Plaintiff has retired and remains medically unfit for duty, any request for injunctive relief is moot.  (Dkt. 91 at 24.)  Plaintiff responds that he is entitled to prospective relief.  (Dkt. 99 at 20.)  Finally, Defendant seeks to dismiss for lack of

subject matter jurisdiction any claims that Plaintiff is asserting for back pay that are brought pursuant to the Back Pay Act, 5 U.S.C. § 5596. (Dkt. 91 at 14–16.) Plaintiff responds that his entitlement to back pay arises under Title VII and this court therefore has jurisdiction to hear the claims. (Dkt. 99 at 15–17.) Upon consideration of the parties' submissions and the arguments of counsel at the hearing, Defendant's Motion is granted in part and denied in part as discussed herein.

### FACTUAL BACKGROUND[3]

Plaintiff is a service-connected disabled veteran with diagnosed conditions including post-traumatic stress disorder (PTSD), major depressive disorder, and a panic disorder. (Dkt. 99-3 at 1–2, 89, 90.) Plaintiff began working at the VAMC on October 20, 2014 as a Registered Nurse (RN) in the emergency department. (Dkt. 91-1 at 50:6–16.) For the October 2014 to October 2015 rating period, Plaintiff received a satisfactory rating on his proficiency report. (Dkt. 99-4 at 2–4.)

In October 2015, the VAMC began an investigation of Plaintiff following allegations of inappropriate and disruptive behavior in the workplace made by two of his co-workers in the emergency department. (Dkt. 94-1 at 6–8.) Plaintiff disputed the allegations and on November 16, 2015, initiated contact with an EEO counselor complaining that he was subjected to a hostile work environment on the basis of his

---

[3] These facts are taken from the factual backgrounds in the Motion and the Response (Dkts. 91, 99) and other relevant parts of the record, including Plaintiff's deposition (Dkt. 91-1) and declaration (Dkt. 99-3 at 79–86).

race, sex, and reprisal. (*Id.* at 10–12.)[4]  Plaintiff contended that he had been harassed by the complaining co-workers and his managers in September 2015. (*Id.*)  During the investigation, Plaintiff was temporarily detailed to another area of the VAMC. (*Id.* at 4.)  Following the VAMC's investigation, a Summary Review Board was unable to determine wrongdoing and recommended that Plaintiff continue his employment at the VAMC "but be removed as a registered nurse from all areas of the emergency department." (*Id.* at 6–7; Dkt. 99-4 at 72–73.)

In March 2016, Plaintiff was transferred to the VAMC's Progressive Care Unit (PCU) and was placed under the supervision of Nurse Manager Catharine Preston. (Dkt. 91-1 at 59:23–60:10.)  Initially, Plaintiff did not have any problems in the PCU or with Preston. (*Id.* at 60:6–10.)  While working in the PCU, Plaintiff's probationary period with the VAMC ended and he became an unrestricted, full-time employee. (*Id.* at 32:12–33:4.)  In September 2016, a VAMC employee union filed a grievance against Plaintiff arising from allegations made by his former co-workers in the emergency department. (Dkt. 91-3 at 1–4.)  As a result of the grievance, Plaintiff was instructed not to enter the VAMC emergency department unless necessary for medical care. (*Id.* at 1–4.)  In October 2016, Preston verbally counseled Plaintiff for violating the VAMC's Standard Operating Procedures regarding verification and completion of

---

[4] Plaintiff's November 2015 EEO contact resulted in a formal discrimination complaint filed on February 16, 2016. (Dkt. 94-7 at 1.)  That complaint was dismissed by an Administrative Judge on March 8, 2019 as a sanction for failure to engage in the discovery process. (*Id.* at 14–18.)

physician orders. (*Id.* at 5–6.) No additional discipline was taken for these incidents and Plaintiff's proficiency ratings for 2016 were satisfactory. (Dkt. 99-4 at 1.)

In December 2016, Plaintiff requested FMLA leave to address his medical conditions and attend necessary medical appointments. (Dkt. 94-5 at 17–21.) Plaintiff believed that the FMLA leave was necessary to "manage exacerbations of [his] PTSD which stress in the workplace was now causing [him]." (Dkt. 99-3 at 81.) In support of the request, Plaintiff submitted a certification from his psychiatrist Dr. Andrew Kozel, who opined that Plaintiff required FMLA leave because of his diagnoses of major depressive disorder, panic disorder, and chronic PTSD. (*Id.* at 87–89.) On January 5, 2017, Plaintiff's request for FMLA leave was approved for 1 episode of FMLA leave per month for a duration of 2 days or 24 hours per episode, and with effective dates of December 22, 2016 through December 21, 2017. (Dkt. 94-5 at 21.)

On October 3, 2017, Preston issued Plaintiff a written counseling for failure to complete required tasks before discharging a patient. (Dkt. 91-3 at 7.) Later in October 2017, a peer review investigated separate allegations that Plaintiff administered a prescription medication to a patient without orders from a physician. (*Id.* at 8–12.) The review concluded that Plaintiff did not practice outside the scope of his license and recommended no disciplinary action. (*Id.* at 12.)

On November 8, 2017, another nurse raised concerns about Plaintiff's alleged failure to follow instructions from a physician to administer a blood transfusion to a patient. (*Id.* at 13.) Prompted by the nurse's report, Preston reviewed Plaintiff's

documentation of patient care over the previous three days and identified "many issues while completing a cursory review." (*Id.*) In an email to Chief Nurse Christopher Schweighardt, Preston stated that she was "worried about keeping [Plaintiff] in direct care" and suggested the possibility of detailing Plaintiff to a "non-patient care area." (*Id.*) Preston continued that she needed "to complete a fact finding" but "since [she] [had] personally completed many fact findings involving [Plaintiff], [she] [thought] it would be best if [she] did not complete this one" because she did not "want it to look as if [she] [was] harassing [Plaintiff]." (*Id.*) On November 15, 2017, Plaintiff was "temporarily detailed to Nursing Education pending [the] fact finding inquiry, results, and corresponding actions." (Dkt. 99-4 at 74; Dkt. 94-2 at 1.)

On November 28, 2017, Plaintiff was approved for additional FMLA. (Dkt. 91-8 at 2–3.) At that time, Plaintiff believed that he needed "more family medical leave in part because of stress from being the subject of a number of fact findings which proved to be unsubstantiated." (Dkt. 99-3 at 81.) Beginning on December 22, 2017, Plaintiff was approved for a total of 480 hours of FMLA leave during a 12-month period, with 2 episodes per month of 2–4 days per episode. (Dkt. 91-8 at 2–3.) Preston was thereafter informed of the change to Plaintiff's FMLA entitlement. (*Id.* at 1–8.) Additionally, beginning in 2017 and continuing through 2018, Plaintiff had continuous issues regarding his entitlement and designation of leave as FMLA. *See, e.g.*, (Dkt. 94-8; Dkt. 99-5 at 11–13.) In particular, Plaintiff and Preston disputed whether Plaintiff was entitled to FMLA and the designation of certain leave entries by

Plaintiff.  (*Id.*)  During that time, Preston repeatedly exchanged emails with Plaintiff regarding his use of certain designations for requested leave and changed Plaintiff's leave designations that she believed to be incorrectly entered.  (Dkt. 94-8.)

The fact-finding into Plaintiff's November 2017 conduct was conducted by Assistant Nurse Manager Susan H. Earle and concluded on January 3, 2018.  (Dkt. 99-4 at 60–65.)  Earle's summary memorandum of the fact-finding stated that Plaintiff "did not follow the physician's orders on multiple occasions, failed to document treatments and pertinent patient information on multiple occasions" and that Plaintiff "does not follow the nursing handoff policy and is in violation of the Joint Commission standards."  (*Id.*)  Preston submitted additional conclusions as an addendum to Earle's memorandum and wrote that Plaintiff "has violated all of the above policies multiple times . . . lacks candor and shows very little insight into his own performance deficiencies."  (*Id.* at 63–65.)  Plaintiff did not receive information regarding the fact-finding while the investigation was ongoing.  (Dkt. 99-3 at 81; Dkt. 99-4 at 81–82.)

On January 12, 2018, a union representative contacted Preston regarding the fact-finding and Plaintiff's continued detail to Nursing Education and stated that the "whole process seems very irregular and the treatment of Mr. Hausburg seems very disparate to what the [union] is used to seeing in relation to the Agency handling similar issues with other employees."  (Dkt. 94-2 at 13–14.)  Preston responded that the fact-finding results were submitted to Human Resources (HR) on January 10, 2018

and Plaintiff's detail "would last until further notice." (*Id.*) Plaintiff stated that he and his union representative met with Earle to discuss the fact-finding, and Earle told them "that the incidents alleged here were the type of incidents that happen in the hospital and do not result in serious discipline." (Dkt. 99-3 at 81.)

Plaintiff again contacted an EEO counselor in mid-January 2018 and complained of the actions surrounding his detail to Nursing Education. (Dkt. 94-2 at 15–21.)[5] A notice of Plaintiff's January 2018 EEO counseling was sent to VAMC Director Joe Battle and Associate Director for Patient Care/Nursing Services Laureen Doloresco. (Dkt. 99-2 at 30–33.) Preston emailed Doloresco and Schweighardt on February 1–2, 2018 and described her "serious concerns" regarding Plaintiff's actions and stated that she was "asking for disciplinary action" against Plaintiff. (*Id.*) Schweighardt confirmed that Plaintiff had received satisfactory proficiency ratings for 2016 and 2017. (*Id.*) On February 5–6, 2018, Plaintiff and Preston exchanged emails regarding Plaintiff's entitlement to FMLA leave and Preston wrote, "I denied the request because you wrote FMLA in the comments and I cannot approve FMLA if it isn't indicated that you have it approved." (Dkt. 99-5 at 11–13.) On February 12, 2018, Preston, Schweighardt, Doloresco, and Andrew Sutton of HR, met concerning Plaintiff. (Dkt. 99-2 at 34–36.) On February 12, 2018, Plaintiff also filed an application for disability benefits with the Social Security Administration. (Dkt. 94-5 at 13–15.) On February 13, 2018, Plaintiff also began the process of requesting medical

---

[5] Plaintiff's January 2018 EEO contact resulted in a formal complaint that was accepted in May 2018 and later amended by Plaintiff in July 2018. (Dkt. 94-7 at 5–11.)

disability retirement from the VA.  (Dkt. 94-2 at 22–23.)  Plaintiff sought disability

retirement because of the "stressful environment" within the PCU that "was making

it impossible for [him] to work given [his] condition."  (Dkt. 99-3 at 82.)

On February 23, 2018, Plaintiff submitted a written request for accommodation

on a VA Form 0857A.  (Dkt. 99-2 at 37.)  Within the request, Plaintiff sought the

following accommodations:

> Provide fixed scheduling that will accommodate all medical
> appointments, my current FMLA status to include any acute flare ups,
> exacerbations, or hospitalizations.
>
> Provide an assignment that will accommodate my current rate of pay as
> an essential 24/7 employee to include, evening and weekend differential,
> incentive and or holiday pay, and the use and accumulation of 8 hours
> of annual and 4 hours of sick leave per pay period.
>
> Provide an assignment in an environment free of undue stress and
> hostility that will facilitate the presen[ce] of my support or service dog.

(*Id.* at 37.)  In support of the request, Plaintiff submitted a letter from Dr. David

Boudreaux, in which Dr. Boudreaux wrote that Plaintiff "experiences emotional and

functional impairment related to his mental health, particularly engaging in activities

in public, for which he believes an emotional support animal likely will be of great

assistance."  (Dkt. 94-3 at 8.)  Plaintiff submitted this request for a reasonable

accommodation "to get out of the stress caused by [his] supervisor," Preston.  (Dkt.

99-3 at 82.)

On February 26, 2018, the Local Reasonable Accommodation Coordinator

emailed Schweighardt regarding Plaintiff's accommodation request.  (*Id.* at 5.)

Schweighardt forwarded the email to Doloresco and wrote "[t]his is the PCU nurse I

am proposing removal.  Michael Benning  [VAMC EEO Manager] came to visit me about this request, because once it goues (sic) through, removal would be difficult." (*Id.*)  On February 28, 2018, Schweighardt emailed Sutton and stated with respect to Plaintiff that "Mr. Battle has approved removal; however, I am scheduled to meet with Mr. Hausburg – at his request – to discuss possible RA / or medical retirement.  My plan was to put the discussion on the RA / retirement on hold and present the removal first so that the removal was in reaction to his requests." (*Id.* at 2.)  On February 28, 2018, Schweighardt cancelled his meeting with Plaintiff due to "unforeseen events." (Dkt. 99-5 at 1.)  On March 27, 2018, Doloresco emailed Preston and Schweighardt asking for an update regarding Plaintiff and stated that they "[n]eed to push for [Plaintiff's] removal."  (Dkt. 99-3 at 4.)  On May 4, 2018, Preston submitted a supervisor's statement regarding Plaintiff's disability retirement application, in which Preston stated that Plaintiff's attendance became "unacceptable" as of December 16, 2016 and that Plaintiff had "excessive [Absent Without Leave (AWOL)] due to call outs that were not covered by FMLA or [Sick Leave (SL)]." (Dkt. 99-2 at 153–54.)

In June 2018, Schweighardt exchanged emails with VAMC Reasonable Accommodations Coordinator Andrea Dankic and wrote that "we have not seen an RA request from Mr. Hausburg.  I was instructing him that he needs to follow the RA process to request to have a dog at work.  I have not approve[d] him to have a dog to work." (Dkt. 99-3 at 3.)  In June and July 2018, Plaintiff and Dankic exchanged emails regarding the documentation necessary to support Plaintiff's request for a reasonable

accommodation.  (Dkt. 94-3 at 4–6.)  Dankic wrote to Plaintiff that "I am still missing clarification of medical documentation" and the medical documentation submitted "does not support the need for a Service Dog [as] [t]he note [] submitted states the employee believes that the support animal will be of great assistance.  However, we need a medical statement from your healthcare provider as to why this service dog is needed."  (*Id.*)  Plaintiff responded that his "[VA] provider indicates filling out that form creates a 'conflict of interest'" and that he did not understand why he was "being denied the 'reasonable accommodation' of [his] service animal while at work in a [VA] hospital."  (*Id.* at 4.)

As a result of the fact-finding following the November 2017 allegations, Plaintiff was issued a proposed discharge letter dated May 18, 2018 that was subsequently rescinded by Defendant due to potential "due process issues."  (Dkt. 99-3 at 7–9, 20.) Plaintiff was then issued a proposed discharge letter dated June 20, 2018, with an effective date of his termination of July 22, 2018 for failure to properly perform his nursing duties and careless workmanship.  (*Id.* at 10–14; Dkt. 94-3 at 19.)  Plaintiff immediately appealed the decision to the Disciplinary Appeals Board (DAB).  (Dkt. 94-3 at 19–34.)  Following a hearing and presentation of evidence by Plaintiff and the VA, the DAB sustained in part the charge of failure to properly perform nursing duties and did not sustain the charge of careless workmanship.  (*Id.*)  Based on these findings, the DAB recommended that "the penalty of removal should be mitigated to a reprimand, and the employee returned to duty."  (*Id.* at 33.)  Defendant thereafter

issued a final decision rescinding the termination, reinstating Plaintiff to full-time status effective January 20, 2019, and directing that Plaintiff return to duty on January 22, 2019. (Dkt. 94-4 at 1–3.) Defendant further ordered that Plaintiff be provided with back pay for the termination period and be reassigned to a new supervisory structure and department. (*Id.*)

Plaintiff returned to work at the VAMC on January 22, 2019 and was placed in a new position working under Dr. William Messina, Chief Nurse, and a new supervisor, Tammi Mercedes. (Dkt. 91-1 at 183:14–184:23.) While attending a new employee orientation, Plaintiff was told that he could not bring his service dog to work without an approved reasonable accommodation. (*Id.* at 185:2–22.) Plaintiff then had a panic attack and was treated at the VAMC emergency room. (*Id.*) Plaintiff did not return to work that day, nor did he again return to work at the VAMC. (*Id.* at 187:15–18; Dkt 94-4 at 6.) On January 25, 2019, Dr. Messina emailed Alfredo Perez of HR, Mercedes, and others, and wrote that "Dartanya Hausburg RN has not reported to duty as of 847am today. I do not have any documentation to review from HR related to his case/condition/limitations for reasonable accommodation. Based on the below, I cannot accommodate an RN who is legally blind and travels to and from all of his destinations with a support animal (service dog?)." (Dkt. 94-5 at 1–2.)

On March 1, 2019, Plaintiff was approved for 480 hours of intermittent FMLA leave. (*Id.* at 7.) On March 8, 2019, Plaintiff contacted an EEO counselor regarding the denial of his having a service dog at work in June 2018, and in January, February,

and April 2019.  (*Id.* at 3–4.)[6]  Following the DAB's decision and his reinstatement, Plaintiff continued to have issues regarding his entitlement to certain back pay and other issues related to his pay and position at the VAMC.  (Dkt. 99-3 at 18–19.) Plaintiff also continued to have issues with his eyesight that began in the fall of 2018 and other medical conditions that required multiple surgeries.  (*Id.* at 85.)

Plaintiff's application for VA disability retirement was  initially denied on April 7, 2020 by the Office of Personnel Management (OPM).  (Dkt. 94-5 at 7.)  On April 30, 2020, the Social Security Administration approved Plaintiff's application for disability benefits and found that Plaintiff had been under a disability as defined in the Social Security Act since March 3, 2018.  (*Id.* at 13–15.)  In June and July 2020, Plaintiff exchanged emails with Mercedes regarding a Notice of Return to Duty issued to Plaintiff.  (*Id.* at 7–8.)  Mercedes informed Plaintiff that he had exhausted his approved FMLA leave as of June 7, 2019.  (*Id.*)  Plaintiff was thereafter medically retired from the VA in 2020 with an effective date of February 2018.  (Dkt. 91-1 at 205:21–206:9.)

Plaintiff initiated this suit by filing a complaint on September 30, 2020.  (Dkt. 1.)  Plaintiff filed the Third Amended Complaint on October 13, 2021 (Dkt. 32) and Defendant answered the Third Amended Complaint on April 29, 2022 (Dkt. 47).  On September 26, 2022, the court approved the parties' consent to the undersigned's

---

[6] Plaintiff's March 2019 EEO contact resulted in a formal complaint of discrimination filed on May 28, 2019.  (Dkt. 94-7 at 12–13.)

jurisdiction to conduct all proceedings in this case, including trial, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (Dkt. 65.)

## APPLICABLE STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials" when resolving a motion for summary judgment.  Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).

A factual dispute is "genuine" only if "a reasonably jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law.  *Id.*  The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes that preclude summary judgment. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" which creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Thatcher v. Dep't of Veterans Affs.*, No. 20-12476, 2021 WL 4940824, at *2 (11th Cir. Oct. 22, 2021), *cert. denied,* 143 S. Ct. 94 (2022) (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)). In determining whether a genuine dispute of material fact exists, the court must review the evidence presented, draw all factual inferences in the light most favorable to the non-moving party, and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Nevertheless, "[p]resenting [] arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." *Blue Cross & Blue Shield of Ala. V. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). The evidence presented in opposition

to a motion for summary judgment further "cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).   Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."   *Matsushita*, 475 U.S. at 587.

## ANALYSIS

As discussed above, Defendant moves for partial summary judgment to the extent that Counts IV and V are based on non-exhausted or procedurally barred allegations, and for summary judgment on Counts III, IV, V, and VII.   (Dkt. 91.) Defendant also moves to dismiss any claims asserted by Plaintiff pursuant to the Back Pay Act for lack of jurisdiction.   (*Id.*)

### A. Administrative Exhaustion

Defendant first argues that Plaintiff failed to exhaust his administrative remedies for certain of the allegations in the Third Amended Complaint, and summary judgment should be granted to the extent that Counts IV and V are based on non-exhausted or procedurally barred allegations.   (Dkt. 91 at 11–14.)[7]   In support, Defendant argues that the VA Office of Resolution Management (ORM) only found

---

[7] Although Defendant's Motion indicates that he is moving for summary judgment for failure to exhaust on Counts I, IV, and V (Dkt. 91 at 2), the Motion also states that Defendant is seeking summary judgment only on Counts III, IV, V, and VII (*id.* at 1, 24) and counsel stated at the hearing that Defendant was not seeking summary judgment as to Counts I and II because the parties agree that fact issues remain as to those counts.   Accordingly, the court does not address Defendant's failure to exhaust argument with respect to Count I (Title VII Retaliation).   *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a prerequisite that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

12 of Plaintiff's EEO claims to be timely-raised discrete acts, and thus Plaintiff may only rely on these claims to support counts IV and V.  (*Id.*)  Defendant also argues that of these 12 claims, Plaintiff is procedurally barred from relying on two claims that were dismissed as a discovery sanction by the EEOC.  (*Id.*)  Finally, Defendant argues that five allegations in Plaintiff's Third Amended Complaint were never raised to the ORM or EEOC and Plaintiff cannot therefore rely on these claims to support Counts IV and V.  The court addresses each of Defendant's contentions below.

### 1.  Prejudice to Plaintiff

As an initial matter, Plaintiff argues that asserting an administrative exhaustion defense at the summary judgment stage of proceedings is procedurally improper and prejudicial to Plaintiff.  The court disagrees.  "When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to [raise the defense in its pleadings] does not cause the plaintiff any prejudice."  *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988); *see also Edwards v. Fulton Cnty., Ga.*, 509 F. App'x 882, 887 (11th Cir. 2013) ("We have also concluded that an omission of an affirmative defense in responsive pleadings does not prejudice a plaintiff when the defendant first raises the defense in a pretrial motion or discussion and the subject matter of discovery suggests that the defendant will rely on the defense.") (citation omitted).  Here, Plaintiff has had notice of Defendant's administrative exhaustion defense since at least April 2022, as Defendant expressly raised administrative exhaustion in at least two of his affirmative defenses to the Third Amended Complaint.  *See* (Dkt. 47 at 15 (First

Affirmative Defense: "Any acts of discrimination and/or retaliation not brought to the attention of an EEO counselor within 45 days are time barred" and Third Affirmative Defense: "All claims for which Plaintiff failed to exhaust his administrative remedies are barred.").)  Thus, Plaintiff cannot show that he was prejudiced by Defendant's raising of administrative exhaustion in the Motion.  *See, e.g.*, *Edwards*, 509 F. App'x at 888 (finding no abuse of discretion where district court found no prejudice in raising administrative exhaustion at summary judgment).

Further, Defendant's raising of administrative exhaustion on summary judgment is not procedurally improper.  In the Eleventh Circuit, an exhaustion of administrative remedies defense "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (*Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 368–69 (9th Cir. 1988)); *see also Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424 (11th Cir. 2010) (extending *Bryant* to Title VII cases).  A pretrial motion raising non-exhaustion of administrative remedies is treated "similar to motions regarding jurisdiction and venue in that '[e]xhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits.'"  *Tillery*, 402 F. App'x at 424 (quoting *Bryant*, 530 F.3d at 1374).  "In those types of Rule 12(b) motions, 'it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.'"  *Id.* (quoting *Bryant*, 530 F.3d

at 1376).  The parties have had sufficient opportunity to develop the record here through extensive discovery taken in this matter.  Further, the court can address the factual disputes between the parties regarding exhaustion without addressing the merits of Plaintiff's underlying claims.  Thus, the court will consider Defendant's administrative exhaustion defense as it would a motion to dismiss for lack of jurisdiction or venue, and will resolve factual disputes raised by the parties without addressing the underlying merits of Plaintiff's claims.

## 2.  Administrative Exhaustion and the Rehabilitation Act

In Counts IV and V, Plaintiff asserts claims for failure to reasonably accommodate disability and disability discrimination pursuant to the Rehabilitation Act.  (Dkt. 32 ¶¶ 85–110.)  The Rehabilitation Act "prohibits federal agencies from discriminating in employment against 'otherwise qualified individuals with a disability.'"  *Thatcher*, 2021 WL 4940824, at *2 (quoting *Mullins v. Cromwell*, 228 F.3d 1305, 1313 (11th Cir. 2000)).  "Claims under the Rehabilitation Act are governed by the same standards as those brought against private employers under the Americans with Disabilities Act [ADA]."  *Id.* (citing *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)).  Further, "[a] plaintiff asserting a private right of action under the Rehabilitation Act must satisfy the exhaustion of administrative remedies requirement in the manner prescribed by Title VII of the Civil Rights Act of 1964[.]"  *Gaillard v. Shinseki*, 349 F. App'x 391, 392 (11th Cir. 2009) (citing 42 U.S.C. §§ 2000e–5, 16; 29 U.S.C. § 794a; *Doe v. Garrett,* 903 F.2d 1455, 1459–60 (11th Cir. 1990)).  To properly

exhaust his administrative remedies under the relevant regulations, the employee "must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  This 45-day time limit may be extended when the individual shows

> that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been (sic) known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2).  "Where the agency believes that some but not all of the claims in a complaint should be dismissed" for failure to timely bring the claims to an EEO counselor, "the agency shall notify the complainant in writing of its determination, the rationale for that determination and that those claims will not be investigated[.]" 29 C.F.R. § 1614.107(b).

"Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies." *Tarmas v. Sec'y of Navy*, 433 F. App'x 754, 759–60 (11th Cir. 2011) (quoting *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008)).  "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice' [and a plaintiff] can only file a charge to cover discrete acts that 'occurred' within the appropriate time period."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  However, "filing a timely charge of discrimination

with the [Equal Employment Opportunity Commission (EEOC)] is not a jurisdictional prerequisite to suit in federal court, but a prerequisite that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes*, 455 U.S. at 393.

The purpose of the exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). The Eleventh Circuit thus instructs that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280 (quoting *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). However, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII or the Rehabilitation Act]" and "the scope of an EEOC complaint should not be strictly interpreted." *Id.* at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970)). Claims are therefore allowed if they "amplify, clarify, or more clearly focus" the allegations made in a plaintiff's EEOC complaint. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (quoting *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir.1980)). "In evaluating whether an employee exhausted administrative remedies," the court must consider "whether the complainant made a good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available

to him or her." *Andrews-Willmann v. Paulson*, 287 F. App'x 741, 745 (11th Cir. 2008) (quoting *Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006)); *see also Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) ("Good faith effort by the employee to cooperate with the agency and EEOC and to provide all relevant, available information is all that exhaustion requires.") (citation omitted).

The parties have not cited any binding Eleventh Circuit authority regarding the scope of the court's review of the agency's timeliness findings.  However, in looking to guidance from other circuits, the court concludes that a *de novo* review of the agency's findings as to timeliness and equitable tolling is appropriate.  *See, e.g.*, *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 550 (9th Cir. 1997) ("The determination of whether a claimant timely exhausted her administrative remedies under the Rehabilitation Act is reviewed *de novo*."); *Shenkan v. Potter*, 71 F. App'x 893, 895 n.1 (3d Cir. 2003) ("Shenkan alternatively argues that we should accord deference to the EEOC's determination that his claims were timely.  Our case law is clear, however, that our review here is *de novo*."); *Teemac v. Henderson*, 298 F.3d 452, 455 (5th Cir. 2002) ("We conclude that the *de novo* trial requirement extends to the EEOC's determination about equitable tolling.").  Further, in addressing similar circumstances, the Eleventh Circuit has looked to the record evidence to determine whether the agency's timeliness determinations were correct.  *See, e.g.*, *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (reversing district court finding that allegation was time-barred where record demonstrated that plaintiff "contacted an EEO counselor within 45 days of . . . the

- 23 -

date that he learned that his demotion had become effective"); *Fortson v. Carlson*, 618 F. App'x 601, 605 (11th Cir. 2015) (finding that district court "correctly found that Fortson's EEOC charge was not timely filed within 180 days of his termination and therefore his Title VII claims are time-barred" based on the record evidence).[8]

### 3. The Parties' Evidence and Arguments

As noted, Defendant seeks to preclude Plaintiff from relying on all but 10 allegations in the Third Amended Complaint as discrete acts to support Counts IV and V. In support of his argument, Defendant relies on three notices from the ORM arising from Plaintiff's three EEO complaints. (Dkt. 94-7 at 1–13.) In the notices, the ORM accepted for investigation 12 of Plaintiff's allegations as discrete, independently actionable claims. (*Id.* at 1–13.) The ORM also affirmatively found that six of Plaintiff's allegations were not timely brought to an EEO counselor and were therefore dismissed for failure to comply with regulatory time limits. (*Id.* at 10.) The ORM further found that these allegations, though untimely, were "sufficiently related to the overall pattern of harassment as they involve the same management official and are inextricably intertwined with the remaining events" to be investigated as part of Plaintiff's hostile work environment claim. (*Id.*) Within the notices, the ORM did not

---

[8] Moreover, this is not a case where the ORM or the EEOC found an allegation to be timely and the agency failed to challenge that finding, such that the agency and the court are bound by the timeliness finding in a subsequent action in federal court. *See Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1253 (11th Cir. 2012) ("There is a sound rationale and logic in holding that if the EEOC determines that a discrimination claim is timely (or, at least, that there is a valid and adequate reason to excuse its untimeliness), and the agency then accepts that determination and proceeds to investigate and attempt conciliation of the claim, that should put the timing issue to rest.").

address the timeliness of several of Plaintiff's allegations.  *See generally* (Dkt. 94-7 at 1–13.)  Defendant further argues that for two of the 12 allegations that were timely raised and accepted by the ORM for investigation, those allegations were dismissed by the EEOC as a discovery sanction and Plaintiff therefore should not be permitted to rely on them in this action.  (Dkt. 91 at 11–14; Dkt. 94-7 at 14–18.)  Thus, of the 60 paragraphs of factual allegations in the Third Amended Complaint, Defendant argues that Plaintiff should only be allowed to rely on 10 as independently actionable, discrete acts in support of Counts IV and V.  (Dkt. 91 at 11–14.)

In response, Plaintiff argues that any unexhausted allegations in the Third Amended Complaint are sufficiently related to exhausted allegations such that they were investigated by the EEOC.  (Dkt. 99 at 13–15.)  Plaintiff further argues that the court must review the ORM's determinations *de novo* and Plaintiff has raised a material issue of fact as to whether his untimely allegations were in fact timely raised or that equitable tolling should be applied.  (*Id.*)  In support, Plaintiff submits his motion in opposition to the dismissal of his six claims as untimely and supporting evidence that he filed before the EEOC.  (Dkt. 99-7.)  From counsel's argument at the hearing, the court understands that this motion was not resolved by the EEOC prior to Plaintiff filing this litigation.

### 4.  Plaintiff's EEO Claims

Upon consideration of the parties' arguments and the record evidence, the court agrees with Defendant in part.

### a. Claims found to be untimely

In response to Defendant's Motion, Plaintiff argues that the ORM wrongly concluded that six of his claims were not timely raised discrete acts and Plaintiff should therefore not be allowed to rely on them as discrete acts to support Counts IV and V.[9] Upon *de novo* review of the ORM's findings, the court agrees.  Specifically, the record reflects that with respect to these claims, Plaintiff either "did not know and reasonably should not have [] known that the discriminatory matter or personnel action occurred, [or] that despite due diligence he [] was prevented by circumstances beyond his []control from contacting the counselor within the time limits[.]"  29 C.F.R. § 1614.105(a)(2).

First, Plaintiff challenges the ORM's untimeliness finding with respect to his November 20, 2017 detail to Nursing Education.  (Dkt. 99-7 at 1–2; Dkt. 32 ¶ 14.)  The ORM found this allegation to be untimely because Plaintiff officially contacted an EEO counselor on January 16, 2018.  (Dkt. 94-7 at 10.)  However, as the record reflects, Plaintiff contacted VAMC EEO Manager Michael Benning regarding this allegation on December 1, 2017 and either believed that this would satisfy the requirement to contact an EEO counselor or was led to believe that Mr. Benning would contact a counselor.  *See* (Dkt. 99-7 at 5, 8–9.)  The court thus finds that equitable tolling should apply to this claim.  *See Hunter v. U.S. Postal Serv.*, 535 F. App'x

---

[9] Plaintiff has not challenged the ORM's determinations that several of his claims and allegations were not discrete acts and the court declines to reconsider each ORM finding here.  *See Blue Cross & Blue Shield of Ala.*, 913 F.2d at 1550 ("Presenting [] arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court.").

869, 871–72 (11th Cir. 2013) (noting that equitable tolling is appropriate in circumstances where "a plaintiff has actively pursued remedies but filed a defective timely pleading or when she was induced or tricked by her employer's misconduct into allowing the deadline to pass") (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Second, Plaintiff challenges the ORM's untimeliness finding with respect to Preston's denial of his leave request on January 9, 2018. (Dkt. 99-7 at 2–3; Dkt. 32 ¶ 20.)  In support, Plaintiff argues that the ORM initially found this to be a timely-reported discrete act based on Plaintiff's reporting on January 16, 2018, but due to confusion caused by his repeated contact with EEO personnel, the ongoing nature of the alleged discriminatory acts, and the amendment of his claims, the EEO subsequently found it to be untimely raised in his later complaints. (Dkt. 99-7 at 2–3, 21–22.)  Upon review, the court agrees with Plaintiff that he timely raised this claim to an EEO counselor on January 16, 2018 and that the ORM's untimeliness finding is incorrect.

Third, Plaintiff challenges the ORM's untimeliness finding with respect to the denial of 44 hours of approved leave from January 14–20, 2018. (Dkt. 99-7 at 3; Dkt. 32 ¶ 22.)  Plaintiff argues that he was initially told that there was no discrepancy in his leave in March 2018, but Plaintiff did not confirm the discrepancy until June 2018. (Dkt. 99-7 at 3, 25–34.)  Plaintiff argues that after confirming the discrepancy, he timely filed a complaint with the EEO counselor in July 2018. (*Id.*)  The court agrees

that based on this evidence, Plaintiff "was prevented by circumstances beyond his []control from contacting the counselor within the time limits" and equitable tolling should apply to this claim. 29 C.F.R. § 1614.105(a)(2).

Finally, Plaintiff challenges the ORM's untimeliness finding with respect to Preston's denial of Plaintiff's leave requests and changes of his timecards after the fact in January and February 2018. (Dkt. 99-7 at 3; Dkt. 32 ¶¶ 24, 30, 34.) Plaintiff argues that he did not learn about these discrepancies until an audit was conducted of his time records in June and July 2018 and thus, he could not have timely reported them to the EEO counselor. (Dkt. 99-7 at 3, 6, 25–34.) The court agrees that based on the evidence presented by Plaintiff, he did not know and reasonably should not have known that the allegedly discriminatory matter or personnel action occurred, or that despite due diligence he was prevented by circumstances beyond his control from contacting the counselor within the time limits. *See* 29 C.F.R. § 1614.105(a)(2). Equitable tolling therefore applies and the claim was timely raised to an EEO counselor in June 2018.

Accordingly, in conducting a *de novo* review of the ORM's findings, the court finds that Plaintiff has presented sufficient evidence that the 45-day counseling period should have been extended and the ORM should have accepted these six claims as timely-filed discrete acts. This is especially true considering the EEOC's acceptance of these claims for investigation as part of Plaintiff's hostile work environment claim such that these allegations were encompassed within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination." *Gregory*, 355 F.3d at 1280; *see also Morey v. McDonald*, No. 8:16-cv-3232-T-23AEP, 2017 WL 2812697, at *2 (M.D. Fla. June 29, 2017) (denying motion for summary judgment and finding administrative exhaustion where plaintiff's claims were "sufficiently related to the overall pattern of harassment as [they involve] the same management officials and [are] inextricably intertwined with the remaining events and [are] included for consideration in the analysis of the harassment claim."). Defendant's Motion is thus denied as to these six claims and Plaintiff may rely on these claims, in addition to those found timely by the ORM, as discrete acts for purposes of Counts IV and V.

### b. Claims dismissed as discovery sanction

Next, Defendant argues that two of Plaintiff's timely raised discrete acts were dismissed by the EEOC as a sanction for failure to cooperate in discovery and are therefore "no longer actionable." (Dkt. 91 at 14.)  As Plaintiff failed to respond to Defendant's argument in his responsive brief and at the hearing, the court agrees. These allegations surround the October 2015 investigation into alleged inappropriate behavior by Plaintiff in the emergency department.  (*Id.* at 12.)  Within the Motion, Defendant states that these allegations are not raised in the Third Amended Complaint.  (*Id.*)  However, upon the court's review, Plaintiff alleges in paragraph 5 that he "complained to his Nurse Manager on or about October 6, 2015 that he was being harassed including sexual allegations by a female nurse[ and] [o]n October 7, 2015, his nurse manager retaliated against him by instituting an investigation of

Plaintiff for inappropriate behavior." (Dkt. 32 ¶ 5.) Nevertheless, Plaintiff failed to respond to Defendant's argument and "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citing *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir.1990)). "Rather, the onus is upon the parties to formulate arguments[.]" *Id.* (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994)); *see also Blue Cross & Blue Shield of Ala.*, 913 F.2d at 1550. Accordingly, Defendant's Motion with respect to these allegations is granted and Plaintiff is precluded from relying on them as discrete acts in support of Counts IV and V.

### c. Allegations not raised to the EEOC

Finally, Defendant argues that five allegations in the Third Amended Complaint, paragraphs 17, 23, 26, 33, 36, were never asserted before the EEOC at the administrative level and accordingly, Plaintiff may not rely on them as discrete acts to support Counts IV and V. (Dkt. 91 at 13–14.) The court agrees in part.

First, Defendant argues that paragraph 17 of the Third Amended Complaint alleges for the first time that Plaintiff was denied FMLA leave on December 21, 2017 and that this claim was not raised during the EEOC proceedings. (*Id.* at 13.) The court disagrees. The ORM accepted as a timely-filed discrete act that "[o]n December 21, 2017, the complainant was charged Absent Without Leave (AWOL)." (Dkt. 94-7 at 8.) The EEOC's investigation would therefore necessarily include the circumstances

in which Plaintiff was charged AWOL, including any denial of FMLA leave, such that it would be encompassed in "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280. Defendant's Motion as to paragraph 17 is therefore denied.

Defendant further argues that paragraph 33 was never raised during the EEOC proceedings. (Dkt. 91 at 14.) Paragraph 33 states that "[o]n March 15, 2018, [Schweighardt and Preston] claimed they completed the audit and that there were no inaccuracies." (Dkt. 32 ¶ 17.) Upon review, the court finds that this allegation should be permitted to support Counts IV and V as it is used to "amplify, clarify, or more clearly focus" the allegations made in Plaintiff's EEOC complaints, including Plaintiff's timely filed claims with respect to Preston's denial of his leave. *Wu*, 863 F.2d at 1547; *see* (Dkt. 32 ¶ 35.) Thus, Defendant's Motion as to paragraph 33 is denied.

Paragraphs 23, 26, and 36 are different. To the extent that these paragraphs raise discrete acts of alleged discrimination, Plaintiff was required to exhaust his administrative remedies. *See Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."); *see also Basel v. Sec'y of Def.*, 507 F. App'x 873, 876 (11th Cir. 2013) ("Discrete acts of discrimination that occur after an administrative filing must first be administratively reviewed before a plaintiff may obtain judicial review of those same acts.") (citing *Ray v. Freeman,* 626 F.2d 439, 442–43 (5th Cir. 1980)). Specifically,

paragraph 23 alleges that on January 30, Preston attempted to intimidate Plaintiff into changing his timecards; paragraph 26 alleges that on February 12, 2018, Plaintiff asked management to intervene to address Preston's alleged harassment but was denied; and paragraph 36 alleges that on April 9, 2018, Preston accused Plaintiff of defrauding his time and attendance.  (Dkt. 32 ¶¶ 23, 26, 36.)  Plaintiff has not presented any evidence that these allegations were raised during the EEOC proceedings and a review of the ORM notices does not demonstrate that the EEOC investigated these allegations as part of its analysis of Plaintiff's other claims.  Accordingly, Defendant's Motion is granted with respect to paragraphs 23, 26, and 36 of the Third Amended Complaint and those allegations may not be considered as discrete acts for purposes of Counts IV and V.

In sum, Plaintiff may rely on the six claims found untimely by the ORM, in addition to those claims found timely by the ORM, as discrete acts to support Counts IV and V.  Plaintiff may not rely on the two claims dismissed a discovery sanction by the EEOC or those acts alleged in paragraphs 23, 26, and 36 of the Third Amended Complaint as discrete acts to support Counts IV and V.[10]

## B. Jurisdiction over claims for back pay

Defendant next argues that any claims asserted by Plaintiff pursuant to the Back Pay Act, 5 U.S.C. § 5596, must be dismissed for lack of subject matter jurisdiction.

---

[10] As Defendant agreed at the hearing, these allegations may be relied upon to support Plaintiff's hostile work environment claims in Count II.  *See Morgan*, 536 U.S. at 115 ("Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.")

(Dkt. 91 at 14–16.)  Defendant argues that because Plaintiff is seeking to enforce the DAB's order for back pay and restoration of benefits "after two personnel decisions were overturned on appeal, his claims are governed by the Back Pay Act" and must be brought in the Court of Federal Claims.  (*Id.*)  Plaintiff responds that rather than seeking back pay pursuant to the DAB's decision, he is "seeking to recover what he should be paid given the fact that the actions of the VA were retaliatory and discriminatory."  (Dkt. 99 at 15–17.)  Thus, because Plaintiff is seeking back pay pursuant to Title VII, the FMLA, and the Rehabilitation Act, jurisdiction in this court is proper.  (*Id.*)  The court agrees with Plaintiff.

Defendant is correct that the Tucker Act vests exclusive jurisdiction in the Court of Federal Claims for claims against the United States, not sounding in tort, for monetary damages over $10,000, including certain claims governed by the Back Pay Act.  (Dkt. 91 at 15 (citing 28 U.S.C. § 1491(a)(1)).)  However, neither of the cases relied upon by Defendant address the Court of Federal Claims' jurisdiction over claims for back pay arising from alleged discriminatory or retaliatory conduct in violation of Title VII or the Rehabilitation Act.  *See Dustin v. United States*, 113 Fed. Cl. 366 (Ct. Cl. 2013) (finding Court of Federal Claims had exclusive jurisdiction over VA employee's Back Pay Act claim arising from alleged noncompliance with employment services agreement under Student Loan Repayment Program); *Athey v. United States*, 108 Fed. Cl. 617 (Ct. Cl. 2013) (denying motion to dismiss for lack of subject matter

jurisdiction VA employee's claims for back pay arising under lump-sum payment statute, 5 U.S.C. §§ 5551–5552).

Rather, the Court of Federal Claims itself has held that where the "authority to award damages under the Back Pay Act . . . derives solely from Title VII," jurisdiction in the Court of Federal Claims is improper. *Taylor v. United States*, 80 Fed. Cl. 376, 381 (Ct. Cl. 2008) ("Congress never intended for the United States Court of Federal Claims to have jurisdiction over claims brought under Title VII."), *aff'd,* 310 F. App'x 390 (Fed. Cir. 2009); *Dourandish v. United States*, 120 Fed. Cl. 467, 474 (Ct. Cl. 2015) ("Even if Mr. Dourandish were to articulate an appropriate civil rights claim, such a claim would not be properly before the court because this court may not adjudicate claims alleging civil rights violations."), *aff'd,* 629 F. App'x 966 (Fed. Cir. 2015). Instead, "Title VII 'provides the exclusive judicial remedy for claims of discrimination in federal employment . . . in the United States district courts, but not in the United States Court of Federal Claims." *Taylor*, 80 Fed. Cl. at 381 (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); 42 U.S.C. § 2000e-5(f)(3)); *see also Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998) ("As courts have repeatedly held, there is no Tucker Act jurisdiction in the Court of Federal Claims to entertain claims involving race, sex, and age discrimination or other claims involving civil rights violations."); *Gardner v. United States*, No. 10-451 C, 2011 WL 678429, at *5 (Fed. Cl. Feb. 17, 2011) ("Title VII [] does not confer subject matter jurisdiction on this Court to entertain plaintiff's claims."), *aff'd,* 439 F. App'x 879 (Fed. Cir. 2011); *Taylor v. United States*, 73 Fed. Cl.

532, 540 (Ct. Cl. 2006) ("Accordingly, regardless of whether plaintiff has exhausted his administrative remedies, this court does not have jurisdiction over claims stemming from the 1993 EEOC decision.") (citing *Montalvo v. United States,* 17 Cl. Ct. 744, 747–49 (1989) (holding that the United States Claims Court, now known as the Court of Federal Claims, does not have jurisdiction to enforce EEOC decisions)).  As Plaintiff alleges entitlement to back pay arising from Defendant's alleged discriminatory and retaliatory conduct pursuant to Title VII, the Rehabilitation Act, and the FMLA, the court finds that it has subject matter jurisdiction to adjudicate Plaintiff's claims and Defendant's motion to dismiss those claims is denied.

### C. FMLA Violations – Count III

In Count III of the Third Amended Complaint, Plaintiff alleges that Defendant violated the FMLA by denying Plaintiff FMLA leave to which he was entitled and by changing Plaintiff's FMLA leave designations after the fact.  (Dkt. 32 ¶¶ 79–84.)  The FMLA prohibits an employer from interfering with an employee's exercise of his FMLA rights and from retaliating against an employee for exercising his FMLA rights. 29 U.S.C. § 2615(a)(1)–(2); *O'Connor v. PCA Fam. Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000) ("The FMLA recognizes two types of claims for alleged violations of these provisions: interference claims, in which employers burden or outright deny substantive statutory rights to which their employees are entitled, . . . and retaliation claims, in which employers discharge employees for exercising their FMLA right to leave[.]") (internal footnotes and citations omitted).  Defendant argues that Plaintiff cannot establish either claim under the FMLA and thus, summary judgment is proper

on Count III.  The court agrees with Defendant that Plaintiff cannot establish an FMLA interference claim, but material issues of fact remain as to Plaintiff's claim of FMLA retaliation.

### 1. FMLA Interference

To establish an FMLA interference claim, Plaintiff must "demonstrate by a preponderance of the evidence that [he] was entitled to an FMLA benefit and [his] employer denied [him] that benefit." *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1274 (11th Cir. 2020) (citing *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018)). In general, "the employer's motives are irrelevant" to an FMLA interference claim. *Batson*, 897 F.3d at 1331.  Under Eleventh Circuit precedent, "an employee doesn't suffer harm from an employer's technical non-compliance with the FMLA . . . when she receives all her requested time off and is paid for her absences." *Graves v. Brandstar, Inc.*, No. 21-13469, 2023 WL 3316741, at *4 (11th Cir. May 9, 2023) (citing *Munoz*, 981 F.3d at 1275).  Pursuant to the regulations promulgated under the FMLA, "[i]f there is a dispute between an employer and an employee as to whether leave qualifies as FMLA leave, it should be resolved through discussions between the employee and the employer."  29 C.F.R. § 825.301(c).  Further, "[i]f an employer's failure to timely designate leave [in accordance with the FMLA regulations] causes the employee to suffer harm, it may constitute an interference with, restraint of, or denial of the exercise of an employee's FMLA rights." *Id.* § 825.301(e).

Defendant argues that Plaintiff cannot establish an FMLA interference claim because he has never been denied FMLA leave to which he was entitled.  (Dkt. 91 at 16.)  Defendant relies on Plaintiff's statement at deposition that Preston never told him that he could not take leave.  (*Id.* (citing (Dkt. 91-1 at 89:8–90:4, 91:4–14).)  In response, Plaintiff argues that his FMLA rights were interfered with by Preston's changing his leave designations after the fact and removing FMLA designations entered by Plaintiff. (Dkt. 99 at 17.)  Plaintiff argues that he was harmed by these after-the-fact changes because redesignating his leave caused him to incur debts and lose pay. (*Id.*)

Upon consideration, Plaintiff has not identified sufficient evidence to create a genuine issue of fact as to whether he was actually denied any FMLA leave to which he was entitled.  In March 2018, at Plaintiff's request, Defendant conducted an audit of Plaintiff's time and attendance records for the previous two years, but did not identify any inaccuracies.  (Dkt. 91-12 at 22–24.)  Plaintiff has not challenged the accuracy of Defendant's audit with respect to his FMLA leave, nor has he identified any specific changes made by Defendant or Preston to his FMLA leave that were inaccurate.  Instead, Plaintiff relies on his own statement that he was denied FMLA leave, and that "the heads of the fiscal department agreed that in March 2018 [Preston] reached back to January 6, 2018 to change *annual leave* claiming he did not have it when he did." (Dkt. 99 at 17) (emphasis added).  Plaintiff then circularly cites to the same paragraphs in his declaration to establish that in so changing his annual leave,

Preston "denied FMLA in the process of many other things." (*Id.* (citing Dkt. 99-3 ¶¶ 14, 16).) But paragraph 14 of Plaintiff's declaration makes no direct reference to any specific errors in Preston's revising of Plaintiff's leave designations and states only that the length of the disciplinary process "seemed to be a plan to force me to use all of my paid leave, sick, annual or otherwise." (Dkt. 99-3 ¶ 14.) Paragraph 16 similarly alleges that Preston undertook the following actions:

> after-the-fact changes in my time and attendance, leave entries, sometimes months after the fact. They included in time periods where she claimed no leave had existed for months, contrary to both my records and what the head of fiscal for the VA later determined. I did have leave. She was wrong on at least some occasions. . . . She denied FMLA. See for example Ex. 27.

(*Id.* ¶ 16.)[11] In looking to Exhibit 27, cited by Plaintiff, he and Preston exchanged emails on February 5–6, 2018, in which Preston questioned Plaintiff's designation of certain leave as FMLA. (Dkt. 99-5 at 9–13.) In the email, Preston initially wrote that the "FMLA I have on file states 2–4 episodes per month, each 2–4 days in duration. If this is still current then you have used all of your FMLA for the month of January

---

[11] Plaintiff cites no evidence to support his statements in paragraph 16 of his declaration and in his Response that "the head of the [VA] fiscal department agreed that in March 2018 [Preston] reached back to January 6, 2018 to change annual leave claiming he did not have it when he did." *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials."); *HRCC, Ltd.*, 703 F. App'x at 816–17 (district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs). However, upon the court's own review of the record, an email exchange between Schweighardt and Plaintiff's union representative confirms that this issue was related to Plaintiff's administrative leave (AL) rather than his FMLA leave. *See* (Dkt. 99-7 at 30–31 (July 17, 2018 union representative email stating that the union "still has not received any feedback regarding the approximately 38 hours of missing AL from Mr. Hausburg's leave account" and Schweighardt's response that "we determined this AL issue was due to incorrect time documented or entered by [Preston] but a Fiscal Department issue").

and I am not able to grant additional FMLA per your request." (*Id.* at 12)  Preston then corrected her statement and wrote, "[t]he most up to date FMLA paperwork that I have for you states TWO episodes per month, each episode lasting 2–4 days.  Is there a new update that states 2–4 episodes a month?  If so, please provide a copy for me.  I denied the request because you wrote FMLA in the comments and I cannot approve FMLA if it isn't indicated on that you have it approved." (*Id.* at 11.)  Plaintiff has not presented evidence that Preston's statements regarding his entitlement to FMLA leave were inaccurate and indeed, in his email response to Preston stated that the request itself was for administrative leave rather than FMLA leave.  (*Id.*)  Further, the undisputed evidence reflects that Plaintiff's approved FMLA leave during that time was for two episodes per month which could each last for two to four days per episode. *See* (Dkt. 91-8 at 2–3.)

Plaintiff can only establish an FMLA interference claim if Defendant interfered with an FMLA benefit to which he was entitled.  *See Munoz*, 981 F.3d at 1275.  Here, Plaintiff's conclusory and vague statements that Preston improperly denied FMLA leave "on at least some occasions" are insufficient to create a genuine issue of fact as to whether Defendant interfered with his rights under the FMLA.  *See Avirgan*, 932 F.2d at 1577 (a plaintiff's evidence "cannot consist of conclusory allegations or legal conclusions"); *see also Thatcher*, 2021 WL 4940824, at *2 ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").  Plaintiff "has not provided any evidence

beyond [his] own assertions that [his] pay was improperly reduced." *Yoosun Han v. Emory Univ.*, 658 F. App'x 543, 546 (11th Cir. 2016) (affirming grant of summary judgment to employer on FMLA interference claim). "While the court 'must draw all reasonable inferences from the evidence in favor of [Plaintiff], it is unreasonable to infer from [Plaintiff's] speculative testimony alone." *Id.* (citing *Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006)); *Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1338 (11th Cir. 2021) ("Matamoros's FMLA interference claim stumbles at the starting line because she can't show that she was entitled to FMLA leave.").

Thus, to the extent that Count III asserts a claim for FMLA interference, the court finds that Defendant is entitled to summary judgment. *See Drago v. Jenne*, 453 F.3d 1301, 1306 (11th Cir. 2006) ("Having reviewed the record carefully, we conclude that Drago was not denied any benefit guaranteed him by the FMLA."); *Ramos v. Delphi Behav. Health Grp., LLC*, No. 21-11218, 2022 WL 1415856, at *3 (11th Cir. May 4, 2022) ("The district court did not err in entering summary judgment in favor of Delphi on Ramos's FMLA interference claim because, by admitting it reinstated her after her FMLA leave and granted all her future leave requests, she failed to show it had denied her a benefit under the FMLA.").

## 2. FMLA Retaliation

Plaintiff also asserts a claim for FMLA retaliation in Count III. To establish an FMLA retaliation claim, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action

for having exercised an FMLA right." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (citing *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)).  Thus, unlike an interference claim, "an employee bringing a retaliation claim faces the increased burden of showing her employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" *Ramos*, 2022 WL 1415856, at *4 (quoting *Strickland*, 239 F.3d at 1207).

Where there is no direct evidence of retaliatory intent, the court employs the three-step, burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[12] *Strickland*, 239 F.3d at 1207.  First, the employee must make a *prima facie* case of FMLA retaliation by showing: "(1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010) (citing *Smith v. BellSouth Telecomm., Inc.*, 273 F.3d 1303,

---

[12] Plaintiff argues that there is "direct evidence of FMLA hostility" but cites no direct evidence in support.  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption.  Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Morgan v. Kalka & Baer LLC*, 750 F. App'x 784, 787 (11th Cir. 2018) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)).  In applying this definition, the Eleventh Circuit has "marked severe limits for the kind of language to be treated as direct evidence of discrimination." *Robertson v. Riverstone Communities, LLC*, 849 F. App'x 795, 801 (11th Cir. 2021) (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998)).  The "prototypical example of direct evidence includes 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of'" the protected characteristic. *Id.* (quoting *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018)); *see also Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 931 (11th Cir. 1995) ("a statement that members of a racial minority in general or women in general are simply not competent enough to do a particular job would seem to be a classic example of direct evidence").  The court does not find that Preston's statement in Plaintiff's disability retirement application that her attendance became unacceptable in December 2016 rises to this level of direct evidence, especially considering her accompanying remarks in the statement that Plaintiff "also had excessive AWOL due to call outs that were not covered by FMLA or SL." (Dkt. 99-2 at 154.)

1314 (11th Cir. 2001)); *see also Ramos*, 2022 WL 1415856 at *4 (citing *Strickland*, 239 F.3d at 1207).  If the employee establishes a *prima facie* case of FMLA retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action.  *McDonnell Douglas*, 411 U.S. at 802–03.  Finally, if an employer articulates a legitimate, non-discriminatory reason, the employee must show that the proffered reason was pretextual.  *Id.*  In other words, the employee must demonstrate that "the defendant's proffered legitimate, non-discriminatory reasons for its adverse action were actually false and that its true motivation was retaliatory."  *Matamoros*, 2 F.4th at 1337 (citing *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999)).  A plaintiff may meet this burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Id.* (quoting *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010)).

Defendant argues that Plaintiff cannot establish a *prima faci*e case of FMLA retaliation because "he was never denied time off or disciplined for taking FMLA time off, so he did not suffer a materially adverse action." (Dkt. 91 at 18.)  Defendant also argues that Plaintiff has failed to rebut his proffered legitimate, non-discriminatory reason for Preston's actions, that Preston was following VAMC policy in inquiring about Plaintiff's leave and changing Plaintiff's incorrectly entered leave entries.  (*Id.* at 19–21.)  These arguments fail for the same reason: adverse employment actions for

Plaintiff's FMLA retaliation claim are not limited to Preston's direct conduct with respect to his FMLA leave.  As explained by Plaintiff, he alleges FMLA retaliation by Preston's detailing him to Nursing Education in November 2017, "which made it hard for him to manage his medical and family issues" and her helping to "terminate him for conduct merely supporting a reprimand." (Dkt. 99 at 18.)  These actions constitute materially adverse employment actions for purposes of FMLA retaliation.  *See Munoz*, 981 F.3d at 1276 ("Ms. Munoz suffered an adverse employment action because Selig terminated her.") (citing *Krutzig*, 602 F.3d at 1234–35); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999) ("actions such as undeserved negative job evaluations, demotions, disadvantageous transfers, or toleration of harassment are actionable under [Title VII's] retaliation clause") (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) (protection from retaliatory discrimination "extends to adverse actions which fall short of ultimate employment decisions")).

Plaintiff has further presented sufficient evidence to create a genuine issue of fact as to whether these adverse employment actions were causally related to his taking FMLA leave.  *See Krutzig*, 602 F.3d at 1234 (the causation prong of the *McDonnell Douglas prima facie* test is to be interpreted broadly and "is satisfied if a plaintiff shows that the protected activity and adverse action were 'not wholly unrelated.'").  For instance, Plaintiff had been taking intermittent FMLA leave for which he was approved throughout the relevant period and his time working in the PCU, including leading up to the alleged adverse employment actions.  This temporal proximity is

sufficient to create a genuine issue of fact as to whether the alleged adverse employment actions were caused by Plaintiff's taking FMLA leave.  *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("Close temporal proximity between an employee's protected conduct and the adverse action is generally 'sufficient to create a genuine issue as to whether there is a causal connection.'") (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)); *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1272 (11th Cir. 2017) ("temporal proximity, for the purpose of establishing the causation prong of a *prima facie* case of FMLA retaliation, should be measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs").  An issue of fact as to causation may also exist where a decisionmaker followed a biased recommendation without independently investigating the facts.  *See Caldwell v. Clayton Cnty. Sch. Dist.*, 604 F. App'x 855, 861 (11th Cir. 2015) ("[C]ausation may be established when a decisionmaker followed a biased recommendation from a non-decisionmaker without independently investigating the complaint.") (citing *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir.1999)).  Here, despite stating that she should recuse herself from the process, Preston provided an addendum to the January 2018 fact-finding memorandum that ultimately led to Plaintiff's termination. (Dkt 99-4 at 63–65).  Plaintiff has therefore established a genuine issues of material fact as to whether these adverse employment actions were causally related to his FMLA leave.

Plaintiff has also presented evidence to raise a genuine issue of fact as to whether Defendant's proffered reasons for these adverse employment actions were pretextual. Initially, Defendant does not proffer a legitimate explanation for the length of Plaintiff's detail or his termination, but instead argues only that Preston was following VAMC policy in adjusting Plaintiff's FMLA leave designations.  (Dkt. 91 at 19–21.) Nevertheless, Plaintiff presented evidence that Preston believed that his taking FMLA leave was "unacceptable" and that Preston engaged in conduct to frustrate Plaintiff's employment within the PCU by subjecting him to investigations regarding allegations that proved to be unfounded.  *See* (Dkt. 99 at 18.)  Plaintiff also presented evidence that Preston and others allegedly engaged in conduct to remove Plaintiff from his position outside of the normal process within the VAMC and at least in part for reasons other than his performance, including potentially for his use of FMLA leave. *See, e.g.*, (Dkt 99-4 at 63–65 (Preston's addendum to the January 2018 fact-finding); Dkt. 99-3 at 5 (Schweighardt emails regarding removal of Plaintiff rather than considering Plaintiff's reasonable accommodation request).).  Plaintiff has therefore created a genuine issue of fact as to whether his termination process was outside the normal course of VAMC policy.  *See Hurlbert*, 439 F.3d at 1299 ("Similarly, an employer's deviation from its own standard procedures may serve as evidence of pretext.").

Accordingly, Plaintiff has sufficiently raised genuine issues of material fact as to whether his adverse employment actions were causally related to his taking FMLA

leave and whether the reasons proffered for these adverse employment actions were pretextual.  *See Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008) ("Intent is at issue. And the record contains evidence on which reasonable minds could find pretext, including the School District's warning to Martin about the ramifications of his taking FMLA leave and the close temporal proximity between Martin's FMLA leave and termination."); *Jones*, 854 F.3d at 1276 ("When viewed in the light most favorable to Jones, the totality of the evidence establishes that there is a genuine dispute of material fact with respect to whether Accentia's reasons for terminating Jones were pretextual.").  Summary judgment on Count III must therefore be denied to the extent that Count III asserts a claim for FMLA retaliation.

### D. Failure to Reasonably Accommodate Disability and Disability Discrimination under the Rehabilitation Act – Counts IV and V

Defendant raises two additional arguments to support his entitlement to summary judgment on Counts IV and V for failure to reasonably accommodate disability and disability discrimination pursuant to the Rehabilitation Act.  First, Defendant argues that based on Plaintiff's own admission, Plaintiff was not a "qualified individual" under the Rehabilitation Act during the relevant period of his employment at the VAMC.  (Dkt. 91 at 21–22.)  Second, Defendant argues that Plaintiff failed to provide the required information to trigger Defendant's duty to engage in the required interactive process to reasonably accommodate his disability.  (*Id.* at 22–24.)  Upon consideration, the court finds that material issues of fact preclude summary judgment on both counts.

### 1. Qualified Individual

Defendant argues that summary judgment is warranted on Counts IV and V because Plaintiff was not a "qualified individual" under the Rehabilitation Act from as early as November 2016.  (Dkt. 91-1 at 21–22.)  To establish claims for failure to reasonably accommodate a disability and discrimination under the Rehabilitation Act, a plaintiff must show that: (1) he is disabled; (2) he was a "qualified individual" at the relevant time, "meaning that [he] could perform the essential functions of the job in question with or without reasonable accommodations"; and (3) he was subjected to unlawful discrimination by Defendant as a result of his disability, including by Defendant's failure to provide a reasonable accommodation.  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001); *Sutton v. Lader*, 185 F.3d 1203, 1207–08 (11th Cir. 1999).

"A person with a disability is 'otherwise qualified' if he is able to perform the essential functions of the job in question with or without a reasonable accommodation." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (citing *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 287 n.17 (1987)).  An individual is not "otherwise qualified" and cannot establish a *prima facie* case of discrimination when, "even with a reasonable accommodation, [they] would be unable to perform the functions of the position[.]"  *Thatcher*, 2021 WL 4940824, at *2 (citing *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000)); *see also Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th Cir. 2000) (determining whether an individual is a "qualified

individual is a two-step process: (1) "does the individual satisfy the prerequisites for the positions" and (2) "can the individual perform the essential functions of the job, either with or without reasonable accommodations?").

In support of his argument, Defendant relies on Plaintiff's application for disability retirement, in which Plaintiff stated that he became medically disabled as of November 2016 (Dkt. 94-9 at 1), and the Social Security Administration's finding that Plaintiff was fully disabled as of March 3, 2018.  (Dkt. 94-5 at 13–15.)  Defendant further relies on Plaintiff being approved for medical disability retirement effective to February 2018 and Plaintiff's statements during his deposition that he was "medically unfit" for duty at the time he applied for a reasonable accommodation in February 2018.  (Dkt 91-1 at 205:21–206:6.)

A claimant's successful application for disability benefits "does not automatically estop the recipient from pursuing an ADA claim." *Gilliard v. Ga. Dep't of Corr.*, 500 F. App'x 860, 869 (11th Cir. 2012) (citing *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999)).  However, "to survive summary judgment, 'an ADA plaintiff cannot simply ignore her [] contention that she was too disabled to work' but 'must explain why that [] contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'" *Kurzweg v. SCP Distribs., LLC*, 424 F. App'x 840, 843 (11th Cir. 2011) (quoting *Cleveland*, 526 U.S. at 797); *see also Talavera v. Sch. Bd. of Palm Beach Cnty.*, 129 F.3d 1214, 1220 (11th Cir. 1997) (whether a certification of total disability

for Social Security purposes is inconsistent with an ADA claim depends on "the facts of the case, including the specific representations made in the application for disability benefits and the nature and extent of the medical evidence in the record," but that "an ADA plaintiff is estopped from denying the truth of any statements made in her disability application").

To survive summary judgment, Plaintiff must therefore "explain why his representations in his disability-retirement applications were consistent with his current allegation that he could perform the essential functions of the job in question, at least with a reasonable accommodation." *See Boyle*, 866 F.3d at 1289 n.6. (citing *Cleveland*, 526 U.S. at 798).  The court finds Plaintiff's explanation here sufficient to create a genuine issue of material fact and preclude summary judgment on Counts IV and V.  In particular, Plaintiff argues that he could perform the essential functions of his job at the VAMC because he was rated "satisfactory, meets all criteria" for three years as a practicing nurse before his temporary detail, and that he applied for a reasonable accommodation only to avoid the exacerbation of his medical conditions caused by the actions of his supervisors.  (Dkt. 99 at 19–20.)  Indeed, Plaintiff argues that the reasonable accommodations and medical disability that he requested were only necessary because his supervisors, including Preston, were engaging in conduct directed at Plaintiff that aggravated his PTSD and other mental health conditions.  *See* (Dkt. 99-3 at 82 ("If I was going to be in a stressful environment and not going to be able to get the accommodation that I wanted, I wanted to be allowed to medically

retire because the environment that I was in was making it impossible for me to work given my condition.").)  Further, although Plaintiff testified that he was "medically unfit" to return to work in February 2018, he also testified that had his service dog been permitted and he was "cleared to return to work" he "absolutely" would have been medically able to do his job in the summer of 2018.  (Dkt. 91-1 at 203:19–23, 205:21–24.)[13]

Based on the conflicting record evidence, the court cannot conclude that no reasonable juror could accept Plaintiff's explanations for any inconsistency between his Rehabilitation Act claims and applications for disability retirement and Social Security benefits.  *See, e.g.*, *Vasquez-Ortiz v. PHC Partners, Inc.*, No. 8:04-cv-1570-T-23TBM, 2005 WL 3477553, at *14 (M.D. Fla. Dec. 19, 2005) ("[I]n a light most favorable to Plaintiff, her explanation that she believed she was physically capable of performing her job at the time that she was terminated coupled with the circumstances suggesting that she could perform her job are sufficient to warrant a reasonable juror's concluding that, assuming the truth of or the plaintiff's good-faith belief in the earlier statement, the plaintiff could nonetheless perform the essential functions of her job, with or without reasonable accommodation."); *Gerhard v. Prescribed Pediatric Extended*

---

[13] Although Plaintiff's Response fails to address his statement in his application for disability retirement that he because disabled from his position as of November 2016, the record indicates that Plaintiff was only approved for medical disability retirement backdated to February 2018.  (Dkt. 91-1 at 205:25–206:3.)  "[I]f an individual has merely applied for, but has not been awarded, [disability] benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system."  *Cleveland*, 526 U.S. at 805; *Gilliard*, 500 F. App'x at 869.

*Care, Inc.*, No. 8:02-cv-2271-T-17EAJ, 2005 WL 1424923, at *6 (M.D. Fla. June 16, 2005) ("According to Plaintiff, it was only after Defendant changed Plaintiff's duties that were not discussed in the initial interview and job description, that Plaintiff began experiencing difficulty performing her job duties.").

### 2. Interactive Process

Defendant further argues that Plaintiff cannot establish a failure to reasonably accommodate his disability as asserted in Count IV because Plaintiff never triggered Defendant's duty to engage in the interactive process regarding his reasonable accommodation request. (Dkt. 91 at 22–24.) The Rehabilitation Act "does not require employers to speculate about their employees' accommodation needs." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1333–34 (11th Cir. 2022). Instead, the Eleventh Circuit requires that "to trigger an employer's duty to provide a reasonable accommodation, the employee must (1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable." *Id.* (citing *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016)). Once the employee makes a sufficient showing, the employer then has an obligation to "initiate an informal, interactive process" with the employee to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3); *see also D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021–22 (11th Cir. 2020) ("Furthermore, 'the [employer's] duty to provide a reasonable accommodation is not triggered unless a

specific demand for an accommodation has been made' by an employee.") (quoting *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)). Additionally, "[a]n agency cannot be held liable for the failure to accommodate where 'the employee is responsible for the breakdown of the interactive process." *Palmer v. McDonald*, 824 F. App'x 967, 980 (11th Cir. 2020) (quoting *D'Onofrio*, 964 F.3d at 1022); *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) ("Liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process."). "[W]hen the parties are 'missing information . . . that can only be provided by one of the parties, . . . the party withholding the information may be found to have obstructed the [interactive] process." *Palmer*, 824 F. App'x at 980 (quoting *Jackson v. City of Chi.*, 414 F.3d 806, 813 (7th Cir. 2005)).

Defendant argues that he never engaged in the interactive process with Plaintiff because Plaintiff failed to provide necessary information to support his reasonable accommodation request. (Dkt. 91 at 23.) Defendant cites June and July 2018 emails between Plaintiff and Reasonable Accommodations Coordinator Andrea Dankic, in which Plaintiff refuses to provide documentation from a medical source stating how an emotional support dog would accommodate his disabilities. (*Id.* at 23 (citing Dkt. 94-3 at 4–6).) Thus, as Defendant argues, because Plaintiff was withholding the

necessary information, the failure of the interactive process was attributable to Plaintiff, and Defendant had no duty to engage in the interactive process to provide Plaintiff with a reasonable accommodation.  (*Id.*)

Upon consideration of the evidence presented by the parties, the court agrees with Plaintiff that material issues of fact remain that preclude summary judgment as to Defendant's failure to reasonably accommodate.  First, as Plaintiff notes, his February 2018 reasonable accommodation request was not limited to a request for an emotional support dog, but also sought accommodations for fixed scheduling and an assignment that that would accommodate his medical conditions and appointments. (Dkt. 99-2 at 37.)  Although Dankic's emails seek additional information regarding Plaintiff's request for an emotional support dog, Defendant has presented no evidence that he otherwise engaged in the interactive process regarding Plaintiff's other reasonable accommodation requests or argued that those requests were insufficient to trigger Defendant's duty.  *See, e.g.*, *Haskell v. Sprint Corp.*, No. 6:10-cv-698-Orl-36GJK, 2012 WL 12952250, at *4 (M.D. Fla. Mar. 12, 2012) ("On the record before this Court, a reasonable jury could determine that Defendant failed to reasonably accommodate Plaintiff in violation of the ADA.")

Further, Plaintiff has presented evidence that could lead a reasonable juror to conclude that the breakdown in the interactive process was not Plaintiff's fault, but, according to Plaintiff, a deliberate attempt by his supervisors to stall the reasonable accommodation process so that Plaintiff could be removed from his position.  *See, e.g.*,

(Dkt. 99-3 at 5 (Schweighardt email forwarding Plaintiff's reasonable accommodation request and stating "once it [goes] through, removal would be difficult"); *id.* at 2 (Schweighardt email stating that removal had already been approved and that his "plan was to put the discussion on the RA / retirement on hold" so that removal could be effected first); *id.* at 4 (Doloresco email stating that they "[n]eed to push for [Plaintiff's] removal").)   Schweighardt thereafter cancelled his February 28, 2018 meeting with Plaintiff to discuss his reasonable accommodation request due to "unforeseen events." (Dkt. 99-5 at 1.)  Indeed, Defendant relies on Plaintiff's emails with Dankic in June and July 2018, but those occurred after Plaintiff received his letters of proposed discharge.  *See* (Dkt. 94-3 at 4–6; Dkt. 99-3 at 7–11.)  Thus, Plaintiff has presented evidence from which a reasonable juror could conclude that the breakdown in the interactive process was the result of Defendant's obstruction rather than Plaintiff's failure to provide documentation to support his request for an emotional support dog.  *See Stewart*, 117 F.3d at 1287 (affirming grant of summary judgment where there was no evidence that employer "obstruct[ed] an informal interactive process; [and] [made] reasonable efforts to communicate with the employee and provide accommodations based on the information it possesse[d.").  Genuine issues of material fact exist as to whether Plaintiff was denied a reasonable accommodation and Defendant is not entitled to summary judgment on Count IV.

### E. Injunctive Relief – Count VII

Finally, in Count VII of the Third Amended Complaint, Plaintiff seeks injunctive relief and preliminary and permanent injunctions enjoining Defendant's "[v]iolations of Title VII or the Rehabilitation Act, [] including retaliation against Plaintiff for protected EEO activity and discrimination based on disability." (Dkt. 32 ¶¶ 122–26.)  Defendant argues that Plaintiff's request is moot and summary judgment on this count is warranted. (Dkt. 91 at 24.)  Specifically, Defendant argues that "[i]t is undisputed that Plaintiff has been retired from the [VAMC] since 2020 and remains medically unfit for duty." (*Id.* (citing Dkt. 91-1 at 205:25–206:6)); *see also* (Dkt. 94-5 at 13–15.)  Plaintiff does not dispute these facts, but instead argues that he is entitled to prospective relief and that Plaintiff could continue to be retaliated against by Defendant. (Dkt. 99 at 20.)

As Plaintiff correctly notes, prospective relief may be available to a Plaintiff asserting claims arising from differential treatment discrimination. *See Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1205 n.8 (11th Cir. 2021) ("To match the relief given to the injury proven, a court considering a case in which a protected characteristic is the but-for cause of differential treatment in an employment decision but not a but-for cause of that ultimate decision should begin by considering 'injunctive or other forward-looking relief.'") (citing *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020)). However, "what relief, if any, is appropriate in the present case is a matter for the District Court to decide in the first instance[.]" *Id.*

Upon consideration of the undisputed evidence, the court finds that no reasonable juror could conclude that Plaintiff is entitled to prospective relief here. First, as noted by Defendant, Plaintiff is no longer employed at the VAMC, has been medically retired by the VA, and has been found to be disabled and unable to engage in substantial gainful activity by the Social Security Administration. (Dkt. 94-5 at 7–8, 13–15; Dkt. 91-1 at 205:21–206:9.) Further, Plaintiff readily admits that since January 2019, his medical conditions, most notably his eyesight, have significantly deteriorated. (Dkt. 99-3 at 85.) Defendant is entitled to summary judgment on Count VII.

## CONCLUSION

Accordingly:

1.    Defendant's Motion for Partial Summary Judgment, Motion to Dismiss (Dkt. 91) is **GRANTED in part** and **DENIED in part**.

2.    Defendant's Motion is granted to the extent that Plaintiff may not rely on those claims dismissed by the EEOC as a discovery sanction (Dkt. 32 ¶ 5) and those claims that were not timely raised to an EEO counselor (*id.* ¶¶ 23, 26, and 36) as discrete acts in support of Counts IV and V.

3.    Defendant's Motion to dismiss Plaintiff's claims for entitlement to back pay is denied.

4.    Defendant's Motion is granted in part as to Count III and Defendant is granted summary judgment to the extent that Count III asserts a claim

for FMLA interference.  Defendant's Motion with respect to Count III is otherwise denied.

5.      Defendant's Motion with respect to Counts IV and V is denied, except regarding those allegations upon which Plaintiff may not rely to support these counts.

6.      Defendant's Motion is granted as to Count VII and Defendant is granted summary judgment on that count.

**ORDERED** in Tampa, Florida, on June 6, 2023.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record