UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARTANYA L. HAUSBURG,

     Plaintiff,

v.                                          Case No: 8:20-cv-2300-JSS

DENIS MCDONOUGH,

     Defendant.

_____/

## ORDER

The parties in this matter have filed Motions in Limine that remain pending before the court.  (Dkts. 133, 135, 136, 137.)  The court heard argument from the parties on the motions on December 6, 2023.  Upon consideration, the Motions in Limine are granted in part and denied in part as discussed below.

## BACKGROUND

Plaintiff Dartanya L. Hausburg brings this employment discrimination and retaliation action against Defendant Denis McDonough, Secretary of the Department of Veterans Affairs (VA), alleging claims arising from Plaintiff's employment at the James A. Haley Veterans Administration Hospital (VAMC) in Tampa, Florida.  (Dkt. 32.)  A jury trial is scheduled to begin before the undersigned on January 29, 2024.  (Dkt. 126.)  The claims remaining for trial are as follows: retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII) (Count I); retaliatory hostile work environment under Title VII (Count II); retaliation under the Family

Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (Count III); failure to reasonably accommodate disability under the Rehabilitation Act of 1973, 29 U.S.C. § 791 (Rehabilitation Act) (Count IV); and disability discrimination under the Rehabilitation Act (Count V).   *See* (Dkt. 108.)  Defendant denies Plaintiff's claims and argues that Plaintiff failed to mitigate his damages and is not entitled to a double recovery for any claim for which he has already been compensated or received other relief.  (Dkt. 127 at 2); *see also* (Dkt. 47.)

On October 16, 2023, the parties filed an Amended Joint Pretrial Statement and their respective exhibit and witness lists, including the opposing party's objections thereto.  (Dkt. 127.)  On November 6, 2023, the parties submitted their Motions in Limine.  (Dkts. 132, 133, 134, 135, 136, 137, 138.)  The court held a final pretrial conference on December 6, 2023, at which the parties presented argument regarding the Motions in Limine.  (Dkt. 163.)  The Motions in Limine that remain pending before the court are as follows: Defendant's Motion in Limine to Exclude New Damages Evidence (Dkt. 133); Defendant's Motion in Limine regarding Prior Claims and Litigation, Including the Testimony of Plaintiff's "Me Too" Witnesses (Dkt. 135); Defendant's Motion in Limine to Exclude Testimony of Newly Disclosed Witnesses (Dkt. 136); and Plaintiff's Motion in Limine to Exclude Testimony of DFAS' 30(b)(6) Witness and a Renewed Motion to Compel His Deposition and For Contempt; and to Exclude Assertions Plaintiff is a Sexual Harasser (Dkt. 137).  Following the pretrial

conference, the parties submitted a joint status report addressing their conferral regarding various issues raised in the motions.  (Dkt. 168.)

## ANALYSIS

### A. Defendant's Motion in Limine to Exclude New Damages Evidence (Dkt. 133)

Defendant moves to exclude Plaintiff's Exhibits 188, including subparts 188-A through 188-I, and 189.  (Dkt. 133.)  At the pretrial conference, the court directed the parties to further confer regarding the exhibits at issue in the motion.  *See* (Dkt. 163.) In their joint status report, the parties represent that they have agreed that Exhibits 188-A through 188-G can be admitted without objection, Plaintiff is withdrawing Exhibit 188H, Exhibit 188-I may be used as a demonstrative exhibit but will not be admitted, and Exhibit 189 is admissible.  (Dkt. 168.)  In light of the parties' agreement, Defendant's Motion in Limine to Exclude New Damages Evidence (Dkt. 133) is granted in part and denied as moot in part as stated in the parties' joint status report (Dkt. 168).

### B. Defendant's Motion in Limine regarding Prior Claims and Litigation, Including the Testimony of Plaintiff's "Me Too" Witnesses (Dkt. 135)

Defendant moves to exclude evidence regarding prior claims and litigation brought against the VA and to exclude the testimony of several of Plaintiff's "me too" witnesses.  (Dkt. 135.)  Plaintiff opposes the motion.  (Dkt. 145.)  Defendant filed a reply in support of the motion (Dkt. 156) and Plaintiff filed a surreply in opposition (Dkt. 161).  Upon consideration, Defendant's motion is granted in part and denied in part.

In cases alleging employment discrimination and retaliation, "me too" evidence involving claims made by other employees may be properly admitted pursuant to Federal Rule of Evidence 404(b) "to prove the defendant's 'motive, . . . intent, . . . [or] plan' to discriminate against the plaintiff." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (citing Fed. R. Evid. 404(b); *Phillips v. Smalley Maint. Servs., Inc.*, 711 F.2d 1524, 1532 (11th Cir. 1983)); *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 854 (11th Cir. 2009) ("We have approved the use of 'me too' evidence under F.R.E. 404(b) in discrimination and retaliation cases."). The Eleventh Circuit also holds that such evidence may be admitted pursuant to Federal Rule of Evidence 402 as relevant evidence to establish a hostile work environment claim when the plaintiff was aware of the other claims involving his supervisory chain. *See Goldsmith*, 513 F.3d at 1286 ("[In some cases, 'this testimony goes directly to the issue of racial harassment on the job.'") (quoting *Busby v. City of Orlando*, 931 F.2d 764, 785 (11th Cir. 1991)); *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1258 (11th Cir. 2014) ("The district court did not abuse its discretion by excluding evidence about incidents of harassment of which Hedgeman and Carter were unaware and that were unrelated to their supervisors.").

However, "courts are reluctant to consider 'prior bad acts' in [the employment discrimination] context where those acts do not relate directly to the plaintiffs." *Denney v. City of Albany*, 247 F.3d 1172, 1189 (11th Cir. 2001) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990)). Indeed, "[e]ven when 'me too'

evidence is relevant under Rule 401, the district court retains the discretion to exclude that evidence, under Rule 403, if it is unduly prejudicial, confusing, misleading, or cumulative." *Adams*, 754 F.3d at 1258. In considering Rule 404(b) evidence, the court must guard against the "the regression of the main case into a series of mini-trials concerning the reliability of 'me too' witnesses" and the validity of their claims. *McLain v. McDonough*, No. 8:17-cv-1283-WFJ-CPT, 2022 WL 604846, at *1 (M.D. Fla. Mar. 1, 2022); *see also Capasso v. Collier Cnty.*, No. 2:12-cv-499-FtM-38DNF, 2014 WL 12607856, at *4 (M.D. Fla. Nov. 26, 2014).

Determining whether Rule 404(b) or corroborative evidence is admissible is a "fact-intensive, context-specific inquiry" that "rests within the sound discretion of the district court[.]" *Adams*, 754 F.3d at 1258 (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008)); *see also DeBose v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-cv-2787-EAK-AEP, 2018 WL 8919981, at *4 (M.D. Fla. Sept. 9, 2018) ("The relevance of such evidence 'is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."). Courts generally admit only that corroborative evidence that "closely compares" with the circumstances alleged by the plaintiff. *Capasso*, 2014 WL 12607856, at *4 (citing *Sprint/United Mgmt. Co.*, 552 U.S. at 385–88); *Jackson v. United Parcel Serv., Inc.*, 593 F. App'x 871, 877 (11th Cir. 2014) (finding no error where district court excluded "me too" evidence showing that supervisor was aware of EEOC complaints filed by a different employee and was not relevant to the plaintiff's claims of discrimination).

Courts have therefore considered several factors, including "whether such past discriminatory behavior by the employer is close in time to the events at issue in the case, whether the same decisionmakers were involved, whether the witness and the plaintiff were treated in a similar manner, and whether the witness and the plaintiff were otherwise similarly situated." *Davis v. City of Lake City*, No. 3:10-cv-1170-J-34TEM, 2013 WL 12091324, at *19 (M.D. Fla. Mar. 15, 2013) (citing *Nuskey v. Hochberg*, 723 F. Supp. 2d 229, 233 (D.D.C. 2010)); *Lewis v. Dep't of Transp.*, 187 F. App'x 961, 961–62 (11th Cir. 2006) (finding no error in excluding "me too" evidence that involved different decisionmakers and different claims of discrimination where "evidence was likely to confuse the issues for the jury and unfairly prejudice the defendants").

In the motion, Defendant seeks to wholly exclude the testimony of 11 witnesses: Marecia Bell, Tammie Terrell, Heidi Salem, Dianne Lane, Gina McLain, Carroll Mitchell, Claudette Patricio, Dr. Carol Rueter, Jerrell Showers, Dr. Sherry Smith, and Erin Tonkyro. (Dkt. 135 at 2.) Defendant also seeks to partially exclude the testimony of Dennis McLain, William Messina, and Scott Springstead, to the extent their testimony concerns their own claims or the claims of non-parties. (Dkt. 156 at 2–4.) Defendant argues that the corroborative testimony of these witnesses is irrelevant and unduly prejudicial because their claims do not "closely compare" to Plaintiff's experience. (Dkt. 135 at 5–10; Dkt. 156.) Defendant further argues that the testimony these witnesses should be excluded because certain of the witnesses lost or settled their

claims against the VA, and that witnesses who could only present hearsay testimony regarding Plaintiff's claims should be excluded.  (Dkt. 156.)  In his response, Plaintiff summarizes the expected testimony of the challenged witnesses and argues that the circumstances of the witnesses' claims are substantially similar to Plaintiff's experience.  (Dkt. 145 at 4–17.)  Plaintiff argues that each of the proffered witness's experiences are probative of a discriminatory intent, motive, or plan of management at the VAMC, where Plaintiff began working in 2014.  (*Id.* at 9.)  Specifically, Plaintiff argues that the proffered testimony is probative of the intent, motive, or plan of Assistant Director of the Nursing Center for the VAMC Loreen Doloresco, who Plaintiff claims "has an extensive history of retaliating against people with [Equal Employment Opportunity] (EEO)] activity (often related to discrimination against African-Americans)."  (*Id.*); *see also* (Dkt. 135-1).

In this action, Plaintiff alleges that he was "discriminated against based on disparate treatment due to his disability, denial of reasonable accommodation, and reprisal for EEO activities when he was subjected to a  hostile work environment from November 1, 2017 to April 18, 2019."  (Dkt. 32 ¶ 12); *see also* (Dkt. 127 at 2–13.) During that time, Plaintiff worked in the VAMC's Progressive Care Unit (PCU) under the supervision of Nurse Manager Catharine Preston, who reported to Chief Nurse Christopher Schweighardt.  Schweighardt, in turn, reported to Doloresco.  (*Id.*) Plaintiff alleges that he was discriminated and retaliated against by Preston, Schweighardt, Doloresco, and others due to his disabilities and protected EEO

activities, including by detailing him to a Nursing Education position in November 2017, retaliating against him for taking FMLA leave, denying him reasonable accommodations for his disabilities, and improperly terminating his employment. (Dkt. 127 at 2–11.)

Upon consideration of the parties' submissions, as well as the various case files and supporting documentation cited by the parties, Defendant's motion is denied as to Plaintiff's proposed witness Marecia Bell.  The court has reviewed Ms. Bell's declaration submitted in this matter (Dkt. 78-3 at 58–77), as well as the summary judgment order entered in her own case,[1] and finds that Ms. Bell's experience as a registered nurse and Assistant Nurse Manager at the VAMC "closely compares" to that of Plaintiff.  *Capasso*, 2014 WL 12607856, at *4.  In particular, Ms. Bell complained of harassment and disparate treatment by her immediate supervisors beginning at the end of 2016 and was moved to different positions in 2017 and 2018, where she allegedly experienced acts of discrimination.  *Bell v. McDonough*, No. 8:20-cv-1274-VMC-CPT (M.D. Fla. Feb. 17, 2022), ECF No. 58 at 5–10.  Ms. Bell engaged in EEO activity throughout 2017, 2018, and 2019, and was denied requests for a new position and extended leave in what she claims was retaliation for her EEO activity. *Id.* at 5–13; (Dkt. 78-3 at 62.)  Moreover, although Ms. Bell was in a different immediate supervisory structure, she claims that Doloresco took no action to protect

---

[1] Defendant relies on Ms. Bell's case to argue that she should not be permitted to present evidence since she lost her case at summary judgment.  *See* (Dkt. 156 at 2 (citing *Bell v. McDonough*, No. 8:20-cv-1274-VMC-CPT (M.D. Fla. 2022)).  However, Defendant has not cited case law relying on the outcome of claims to exclude corroborative evidence in the employment discrimination context.  (*Id.*)

her from her alleged hostile work environment and that Doloresco was involved in the claimed retaliatory conduct around the same time as Plaintiff's claims in this case. (Dkt. 78-3 at 68, 76.)  Accordingly, Defendant's motion is denied with respect to Ms. Bell, and the court will allow her to testify regarding corroborative evidence from her own claims.

Upon consideration of the remaining challenged witnesses, Defendant's motion is granted as the court finds that their circumstances and proffered testimony are too attenuated to be offered as corroborative witnesses at trial.  Initially, the testimony of those witnesses discussing claims brought against the VA over the course of several years and with varying degrees of success and without knowledge or direct relation to Plaintiff's claims raises substantial risks of misleading the jury and confusing the issues at trial, specifically the alleged discrimination and retaliation against Plaintiff in this case.  *See, e.g.*, *Gilyard v. Bank of Am. Corp.*, No. 3:09-cv-944-J-20TEM, 2011 WL 13295442, at *2 (M.D. Fla. Feb. 25, 2011) ("any probative value held by the evidence is outweighed by the prejudicial impact on the jury"); *Patton v. PMTD Restaurants LLC*, No. 2:17-cv-803-RDP, 2020 WL 10185428, at *1 (N.D. Ala. Nov. 3, 2020) ("Even if the 'me too' evidence is relevant under Federal Rule of Evidence 401, the court finds any probative value of the evidence is substantially outweighed by a danger of unfair prejudice to Defendant and that the 'me too' should therefore be excluded under Rule 403.") (citing *Adams*, 754 F.3d at 1258).  This is especially true given the limited probative value to which Plaintiff ascribes their testimony, largely in establishing

Doloresco's plan, motive, and intent in deciding to take adverse employment actions against Plaintiff in 2017, 2018, and 2019.   None of Plaintiff's proffered witnesses appear to have been in his same department or role in the PCU or nursing education, nor did any have the same direct supervisors, Cathy Preston and Christopher Schweighardt.   The proffered witnesses' claims also largely lack temporal proximity to the alleged actions taken against Plaintiff here.   Rather, their link to Plaintiff appears to be through their employment at the VAMC and Doloresco, who Defendant represents "is in the supervisory chain of command for at least 1,500 nurses at the VAMC."   (Dkt. 135 at 9.)   Permitting Plaintiff to introduce certain witnesses in Doloresco's chain of command that have engaged in EEO activity and claim retaliation or discrimination raises the likelihood of substantial rebuttal testimony and the confusing of issues with regard to Doloresco's treatment of the hundreds of employees she oversees.   *Cf. Adams*, 754 F.3d at 1258 (noting that the size of a company may impact a district court's consideration of "me too" evidence).   Any probative value from these witnesses as to Plaintiff's claims in this case is substantially outweighed by the likelihood that their testimony would result in undue prejudice, confusion of the issues, and misleading of the jury.   Fed. R. Evid. 403; *Adams*, 754 F.3d at 1258.

Moreover, the court finds that the experiences of the remaining challenged witnesses do not closely compare to Plaintiff's circumstances.   Thus, their testimony may not be admitted for purposes of proving Defendant's motive, intent, or plan to

discriminate and retaliate against Plaintiff pursuant to Rule 404(b).  *See Sprint/United Mgmt. Co.*, 552 U.S. at 388; *McLain*, 2022 WL 604846, at *2 (excluding proffered witnesses where their testimony "offers no direct or reasonably inferential proof supporting Plaintiff's claim").

**Tammie Terrell**.  Plaintiff represents that Ms. Terrel would testify regarding her denial of a Chief Nurse position at the Haley Cove Community Living Center.  (Dkt. 145 at 14–15.)  Upon review of the summary judgment order entered in Ms. Terrell's case cited by Defendant, Ms. Terrell was not selected for the position in 2015, and also alleged retaliation by individuals including Doloresco for Ms. Terrell's support of Dr. Carol Rueter, a disabled individual who applied for a chief nursing position in 2015. *See Terrell v. McDonough*, No. 8:20-cv-64-WJF-AEP (M.D. Fla. Oct. 1, 2021), ECF No. 65.  Ms. Terrell's claim did not relate to any discrimination based on her own disability, but rather alleged discrimination related to her race and national origin. (*Id.*)  Ms. Terrell was further in a separate direct supervisory structure than Plaintiff and her alleged retaliatory conduct through her non-selection to a Chief Nurse position at the VAMC.  Ms. Terrell's experience is therefore not closely comparable to Plaintiff's and her testimony is therefore of little probative value to Doloresco's or others' alleged discriminatory intent in taking actions directed at Plaintiff and will not be admitted.

**Heidi Salem**.  Plaintiff asserts that Ms. Salem would testify to engaging in EEO activity in 2014 and 2015 and that she was retaliated against in 2016.  (Dkt. 145 at 9–

10.)  Plaintiff argues that Ms. Salem would testify that Doloresco did not select her for an open position and refused to speak with her, prompting Salem to file a reprisal complaint that resulted in Salem being awarded the position.  (*Id.*)  Ms. Salem does not allege any discrimination based on a disability, and according to Defendant, Ms. Salem's initial claims arose from alleged race and sex discrimination.  (Dkt. 156 at 3.)  Ms. Salem's was thus not similarly situated with Plaintiff and her experiences at the VAMC are not closely comparable to Plaintiff's.  Ms. Salem's testimony would offer little probative value into Doloresco's or others' intent with respect to Plaintiff, and is excluded.

**Gina McLain**.  Ms. McLain's testimony relates to alleged discrimination and retaliation at the VAMC in response to her and her husband's EEO activities in representing others as a union representative.  (Dkt. 145 at 12–13.)  Plaintiff also represents that Ms. McLain was involved in certain incidents with Doloresco in 2015 and 2016, which Ms. McLain claims demonstrates Doloreco's bias towards her.  (*Id.*)  Ms. McLain's declaration submitted to the court in this matter states that she was not selected for a Chief Nurse of Mental Health position in 2014, and that she received an admonishment from her supervisor Elaine Cohen that included a statement that Ms. McLain "uses EEO as a platform."  (Dkt. 99-3 at 77–78.)  Ms. McLain's experiences are far too attenuated from Plaintiff's here, and her testimony as a corroborative witness as to Doloresco's or others' intent, plan, or motive with respect to Plaintiff will therefore be excluded.

**Carol Mitchell**.  Plaintiff's proffered summary of Ms. Mitchell's testimony states that she is or was an "employee at James A. Haley Hospital.  She knows about witnessed acts of discrimination and retaliation committed against her by Laureen Doloresco and the nursing service, as discussed in Dennis McLain's deposition." (Dkt. 135-1 at 1.)  Plaintiff has provided no additional information regarding Ms. Mitchell's testimony, nor has he directed the court to where Mr. McLain's deposition has been filed in this matter.  Defendant represents that Ms. Mitchell "worked [in] a different hospital than Plaintiff and settled her claim in 2008." (Dkt. 156 at 3.)  The court therefore finds that Ms. Mitchell's experiences are too attenuated from Plaintiff's here and her testimony as a corroborative witness will be excluded.

**Claudette Patricio**.  According to Plaintiff, Ms. Patricio's testimony would relate to her denial of a manager's position in 2013 and alleged retaliation and discrimination by Doloresco and others in denying her another position in 2014.  (Dkt. 145 at 11–12.)  Ms. Patricio's experiences at the VAMC are not "closely related" to Plaintiff's claims as her allegations largely pre-date Plaintiff's claimed retaliatory conduct by approximately three years and she was not similarly situated with Plaintiff in either her position at the VAMC or the type of discriminatory conduct she experienced.  Her testimony as a corroborative witness as to Doloresco's or others' intent, motive, or plan with respect to Plaintiff will be excluded.

**Dr. Carol Rueter**.  Plaintiff proffers that Dr. Rueter would testify to her filing of a grievance in December 2014 against Lucille Raia, which was denied by Doloresco,

and an EEO complaint against Doloresco for disability discrimination on September 1, 2015.  (Dkt. 145 at 15–16.)  Plaintiff further states that Dr. Rueter would testify that "[s]he had been told by the Assistant Chief of Social Work that Director Kathleen Fogarty would never let her advance if she had an EEO" and that "[g]iven Doloresco's reputation for retaliating, Rueter, with no hope for upper-level help, left the Tampa VA." (*Id.*)  Although Dr. Rueter appears to have raised claims of disability discrimination in 2014, she does not appear to have been similarly situated with Plaintiff in either position or the type of retaliatory or discriminatory action taken against her, and her testimony as to what she heard and her beliefs as to retaliatory or discriminatory attitudes at that time are far too attenuated to the facts of this case.  Dr. Rueter's proffered testimony is of minimal probative value to Plaintiff's claims here, and her testimony as a corroborative witness will be excluded.

**Jerrell Showers**.  Plaintiff proffered Mr. Showers' declaration in this matter, in which he alleges that he was passed over for a promotion because of his race in April or May 2020 and February 2021.  (Dkt. 99-3 at 47–49.)  Plaintiff further states that "Showers (Black) was discriminated and later retaliated against by Doloresco." (Dkt. 145 at 16.)  Mr. Showers' experience at the VAMC is not closely comparable to Plaintiff's, as Mr. Showers alleges discrimination and retaliation occurring after Plaintiff's alleged incidents and due to his race, makes no mention of EEO activity or disability discrimination, and makes only passing reference to Doloresco.  (Dkt. 99-3 at 47 ("Laureen Doloresco, Associate Director, Patient Care/Nursing is my service

chief and has been since I started as Assistant Nurse Manager in January 2016.  Ms. Doloresco is a Caucasian (white) female.").  Mr. Showers' corroborative testimony will be excluded.

**Dr**. **Sherry Smith**.  According to Plaintiff, Dr. Smith, who worked in a managerial role, would testify to Doloresco's alleged discrimination against her by denying her a proper office and an assistant manager in 2014 and 2015. (Dkt. 145 at 12.)  Dr. Smith would also testify that she was forced to employ "problem employees," one of whom filed a complaint against her that proved to be unfounded.  (*Id.*)  Plaintiff does not proffer that Dr. Smith would testify to any disability discrimination nor does her role at the VAMC or experience with Doloresco appear comparable to Plaintiff's.  As such, Dr. Smith's experiences are attenuated from Plaintiff's and her testimony would be of little probative value to Doloresco's or others' intent, plan, or motive with respect to Plaintiff in this case.  Dr. Smith's testimony will therefore be excluded.

**Erin Tonkyro**.  Plaintiff represents that Ms. Tonkyro would testify that she was told by the Service Chief of Radiology that Ms. Tonkyro and others who successfully brought "sexual harassment EEO claims would not be advanced to manager's position[s] according to Director Kathleen Fogarty and Chief of Staff Cutolo." (Dkt. 145 at 15.)  Plaintiff does not assert that Ms. Tonkyro would provide any evidence regarding those in Plaintiff's chain of command, including Doloresco, and the proffered information regarding non-promotion of those bringing sexual harassment

EEO claims is far attenuated from the allegations in Plaintiff's case.  Ms. Tonkyro's testimony is therefore excluded.

Defendant further seeks to exclude any corroborative testimony from Plaintiff's proffered witnesses Dennis McLain, Dr. William Messina, and Scott Springstead. (Dkt. 156 at 2, 4.)  Defendant does not seek to prohibit the testimony of these witnesses as to their own observations and experiences as Plaintiff's union representatives or supervisor.  (*Id.*)  According to Plaintiff, Mr. McLain's testimony would concern alleged discriminatory hiring practices at the VAMC by Doloresco and others, as well as alleged discrimination and retaliation against him by not hiring him for positions and taking other actions in 2014 and 2015 in retaliation for his representing other potential claimants as a union representative.  (Dkt. 145 at 11); (Dkt. 78-3 at 31–38, 39–47).  Plaintiff also summarizes Dr. William Messina's testimony as relating to his support of Heidi Salem's candidacy for a position and her EEO activity, and subsequent retaliation against him by Doloresco and others by downgrading his evaluation and forcing him to hire poor quality candidates.  (Dkt. 145 at 10.)  Finally, Plaintiff states that Mr. Springstead is not a "me too" witness, but rather would only testify "about facts he heard and observed in meetings directly relating to Plaintiff and the Defendant while the Defendant was taking actions against the Plaintiff."  (Dkt. 161 at 4.)  Like the witnesses discussed above, the court finds that the experiences of these witnesses are far too attenuated from Plaintiff's and that any probative value from their testimony as corroborative witnesses is substantially outweighed by the risk

of undue prejudice, confusion of the issues, and misleading the jury. Specifically, their positions at the VAMC are far different to Plaintiff's, and Mr. McLain's experience of alleged reprisal for his activities as a union representative and Dr. Messina's experiences in facing reprisal for his support of a subordinate are far afield. Defendant's motion is therefore granted as to Mr. McLain, Dr. Messina, and Mr. Springstead, and their testimony shall not include any corroborative testimony of their own or others' claims.

Defendant finally seeks to wholly exclude the testimony of Plaintiff's proposed witness Diann Lane as an improper Rule 404(b) witness. (Dkt. 135 at 2.) Plaintiff proffers that Ms. Lane "had an opportunity to observe Doloresco's retaliatory attitude towards others[ and] [s]he can testify to her reputation for retaliation." (Dkt. 145 at 16–17.) According to Plaintiff, Ms. Lane is not being offered as a corroborative witness, but rather will testify as to "facts she heard and observed as a secretary sitting outside of the door to Doloresco's office and to Doloresco's reputation." (Dkt. 161 at 4.) Upon consideration, Defendant's motion is denied as to Ms. Lane. In light of Plaintiff's explanation, the court declines to exclude Ms. Lane's testimony in full, and will rather permit Plaintiff to call her as a witness, subject to Defendant's raising of any objections to the admissibility of her testimony at trial.

Accordingly, Defendant's Motion in Limine regarding Prior Claims and Litigation, Including the Testimony of Plaintiff's "Me Too" Witnesses (Dkt. 135) is granted in part and denied in part. Defendant's motion is denied as to Plaintiff's

proposed witnesses Marecia Bell and Diann Lane, and granted as to the remaining witnesses discussed herein.

### C. Defendant's Motion in Limine to Exclude Testimony of Newly Disclosed Witnesses (Dkt. 136)

Defendant moves to exclude the testimony of five witnesses that it claims were not disclosed as witnesses during discovery and whose testimony would now be unfairly prejudicial. (Dkt. 136.)  Specifically, Defendant moves to exclude testimony from the following individuals listed on Plaintiff's witness list (Dkt. 127-3): Peter Alson, April Dietrix, Tammie Ferrell, Heidi Gordon, and Denise Harrison.  (*Id.*) Plaintiff opposes the motion in part.  (Dkt. 143.)  Upon consideration, Defendant's motion is granted in part and denied in part.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires that "a party must, without awaiting a discovery request, provide to the other parties: the name . . . of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses[.]"  Fed. R. Civ. P. 26(a)(1)(A)(i). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness  . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37.

The parties agree that Tammie Ferrell and Heidi Gordon were misnamed on Plaintiff's witness list, and that Plaintiff properly disclosed Tammie Terrell and Heidi Salem as potential witnesses.  *See* (Dkt. 136 at 2 n.1; Dkt. 136-1; Dkt. 143 at 2.)

Defendant's motion is therefore denied as to Tammie Terrell and Heidi Salem.[2] Plaintiff has also agreed that he will not call Denise Harrison as a witness.  (Dkt. 168 at 2.)  Defendant's motion is therefore granted as to Denise Harrison.

Plaintiff states that "Peter Alson" on his witness list, refers to Albert Pete Alston, Jr.  (Dkt. 143 at 2.)  According to Plaintiff, Mr. Alston is the Office of Personnel Management (OPM) official who signed the dismissal of the OPM's opposition to Plaintiff's disability retirement claim, and the only purpose of Mr. Alston's testimony is to authenticate that document.  (*Id.*); *see also* (Dkt. 78-2 at 5–13.) In their joint status report, the parties stated their agreement that "the document which Mr. Albert P. Alston signed is a record of a government investigation and is admissible."  (Dkt. 168 at 2.)  Accordingly, because Mr. Alston's testimony will no longer be needed at trial, Defendant's motion is granted as to his testimony.

Finally, Plaintiff argues that "April Dietrix" on his witness list refers to April Dierickx, whose name was disclosed in an affidavit submitted in Plaintiff's opposition to Defendant's motion for partial summary judgment.  (Dkt. 143 at 2 (citing Dkt. 99-3 at 33 ¶ 8).)  Apart from the untimely and questionable sufficiency of this disclosure, Plaintiff states that Ms. Dierickx's testimony "may become relevant as it relates to a retaliatory action by Doloresco against Dennis McLain."  (Dkt. 143 at 2.)  As discussed above, the court has excluded any Rule 404(b) or corroborative testimony regarding alleged retaliatory or discriminatory actions taken against Mr. McLain thus

---

[2] As discussed above, the court has excluded Ms. Terrell's and Ms. Salem's testimony as corroborative witnesses.

obviating the need for Ms. Dierickx's testimony.  Accordingly, Defendant's motion to exclude the testimony of Ms. Dierickx is granted.

### D. Plaintiff's Motion in Limine to Exclude Testimony of DFAS' 30(b)(6) Witness and a Renewed Motion to Compel His Deposition and For Contempt; and to Exclude Assertions Plaintiff is a Sexual Harasser (Dkt. 137)

Plaintiff moves to exclude the testimony of Erron Jackson, a supervisor at the Defense Finance Accounting Service (DFAS), renews his motion to compel a 30(b)(6) deposition of Mr. Jackson, for an order finding Defendant in contempt for failing to produce a DFAS 30(b)(6) witness previously, and to exclude reference to Plaintiff as a "sexual harasser." (Dkt. 137).  In their joint status report, the parties represented that they had scheduled the deposition of Mr. Konkel, which would obviate the need for Mr. Jackson's testimony. (Dkt. 168 at 2.)  Accordingly, Plaintiff's motion is denied without prejudice to the extent it seeks to exclude Mr. Jackson's testimony, compel a Rule 30(b)(6) deposition of DFAS, or hold Defendant in contempt.  Further, Defendant agreed that it would not refer to Plaintiff as a "sexual harasser" at trial, to which Plaintiff agreed at the pretrial conference. (Dkt. 148 at 1.)  Plaintiff's motion is granted to that extent.

### CONCLUSION

Accordingly, upon consideration:

1. Defendant's Motion in Limine to Exclude New Damages Evidence (Dkt. 133) is **GRANTED in part** and **DENIED as moot in part** as stated in the parties' joint status report (Dkt. 168).

2. Defendant's Motion in Limine regarding Prior Claims and Litigation, Including the Testimony of Plaintiff's "Me Too" Witnesses (Dkt. 135) is **GRANTED in part** and **DENIED in part**.  Defendant's motion is denied as to Plaintiff's proposed witnesses Marecia Bell and Diann Lane, and is granted as to the remaining witnesses discussed herein.

3. Defendant's Motion in Limine to Exclude Testimony of Newly Disclosed Witnesses (Dkt. 136) is **GRANTED in part** and **DENIED in part** as discussed herein.

4. Plaintiff's Motion in Limine to Exclude Testimony of DFAS' 30(b)(6) Witness and a Renewed Motion to Compel His Deposition and For Contempt; and to Exclude Assertions Plaintiff is a Sexual Harasser (Dkt. 137) is **GRANTED in part** to the extent that  Defendant will not refer to Plaintiff as a "sexual harasser" at trial, and is otherwise **DENIED without prejudice**.

   **ORDERED** in Tampa, Florida, on January 10, 2024.

                                          _____
                                          JULIE S. SNEED
                                          UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of Record